WALLACE M. KILBOURNE, AS SUPERVISOR OF THE TOWN OF LIBERTY, RESPONDENT, *v.* THE BOARD OF SUPERVISORS OF SULLIVAN COUNTY, APPELLANT.[*]

*Towns — railroad bonds — application of taxes to their payment — when the cause of action arises — relief granted in an equitable action — effect of the refusal of supervisors to levy a tax.*

It is provided, by chapter 398 of the Laws of 1866, that towns in counties along the line of the New York, Oswego and Midland Railroad, including the county of Sullivan, might subscribe to its capital stock and issue bonds for such subscriptions; and by section 16 thereof said railroad corporation was exempted from all taxation. By section 4 of chapter 907 of the Laws of 1869, as amended by chapter 283 of the Laws of 1871, it is provided that in the case of all towns

---

[*] See *Barnum* v. *Supervisors, ante,* page 190.

which have bonded themselves in aid of railroads, all taxes, except school and road taxes, collected upon the assessed valuation of such a railroad, shall be paid over to the county treasurer and constitute a sinking fund to pay off such railroad aid bonds.

The exemption from taxation granted to the New York, Oswego and Midland Railroad by the act of 1866 was repealed by the Laws of 1874 (chap. 296), the first section of which related generally to the taxation of that railroad, and the second section provided that all moneys collected upon its property for county taxes should be appropriated to the towns which had issued bonds in aid of said railroad, and should be paid over to the town railroad commissioners.

In an action by the town of Liberty, which had issued certain bonds, under the act of 1866, to recover such State tax moneys alleged to have been improperly diverted by the county to county purposes:

*Held,* that the action could be maintained.

That, under the act of 1869, the town acquired a right to have both State and county taxes, so far as the same had been assessed upon railroad property, applied to retire its bonds.

That the act of 1874 modified the act of 1869, in that it directed the county tax thus levied to be paid to the town railroad commissioners, leaving the State tax to be paid over to the county treasurer, but in both cases for the purpose of retiring said bonds.

That the act of 1874 did not, by implication, repeal the act of 1869, and that they were not so inconsistent but that both might stand together.

That, in an action of this character, the cause of action arose when the taxes were misappropriated, that is to say, when they had been actually used for the benefit of the county.

That as the plaintiff, among other things, demanded and obtained a judgment that the taxes in question be levied upon the taxable property of the county, the action was not one for money, but it was in its nature an equitable action.

That it might include such relief as was proper upon the state of facts disclosed at the close of the litigation.

That the phrase in the Laws of 1871 (chap. 283), " all taxes, except school and road taxes, collected," did not refer to the State school tax, but to local taxes for such purpose.

That the fact that the supervisor of the town submitted the matter in controversy to the board of supervisors of the county at its annual meeting, and that said board considered the same and decided not to levy any tax, was not a bar to this action and did not compel the plaintiff thereafter to proceed by *mandamus* or *certiorari* directed to said board.

APPEAL by the defendant, the Board of Supervisors of Sullivan County, from a judgment of the Supreme Court, entered in the office of the clerk of Sullivan county on the 22d day of September, 1890, directing a recovery for the plaintiff of $1,504.08, besides costs, and ordering said board to levy and collect the same by tax

upon the taxable property of the county, with notice of an intention to bring up for review upon such appeal an order granting to plaintiff an extra allowance of costs, after a trial by the court at the Sullivan Circuit.

The following opinion, delivered by Mr. Justice MAYHAM on the trial of the above-entitled action and of three other actions, brought, respectively, by John F. Simpson, as supervisor of the town of Falls-burgh, by John F. Bennett, as supervisor of the town of Mamakating, and by M. N. Dodge, as supervisor of the town of Rockland, against the same defendant, was adopted by the General Term :

MAYHAM, J. The above-entitled actions grew out of a similar state of facts, involving the same legal questions, and may properly be considered together, as the decision of one disposes of the legal questions raised in all the others.

The actions are to recover money in each case collected by taxation on the New York and Oswego Midland Railroad Company and its successor, the New York, Ontario and Western Railroad Company, in said towns, respectively, which was used by the county treasurer for the use and benefit of the county, which it is claimed by the plaintiff belonged to the individual towns.

The case shows that in each of the years 1874 to 1887, both inclusive, the assessors of each of the towns in Sullivan county made, completed, verified and delivered to the supervisor of their town an assessment-roll of the real and personal property of their respective towns, as required by statute, including the property of the New York and Oswego Midland Railroad in the town through which it passed, which were the towns mentioned, respectively, in the above-entitled actions, and that such assessment-rolls formed the basis of the equalization of assessments made by the board of supervisors in each of said years.

Upon the basis of such assessment and equalization the board of supervisors at its annual meeting, during the period above stated, levied such State taxes as were apportioned to the county ratably among the several towns thereof, including those for which the above-entitled actions are prosecuted.

The money raised from such levy by the tax upon the aforesaid railroad, with all the other taxes collected in said towns, were by the several collectors thereof, as directed by the warrant issued to them

by the Board of Supervisors, paid to the various persons and officers therein designated.

The money raised for the support of roads and bridges to the commissioner of highways, the money to defray town expenses to the supervisor, the money to pay the interest on town bonds issued in aid of construction of such railroad, to the railroad commissioners, and the money raised for State and county tax and for town poor to the county treasurer of Sullivan county, and all the tax levied upon and collected from the said railroad in each of the said towns, in any of the years above specified, were paid over as above set forth. Each of the towns was duly represented each year in the board of supervisors of the county and took part in the equalization of the assessments of the county and in levying the tax upon the property of the towns, including the railroad in the towns through which the railroad ran, which were bonded in aid of its construction. No proceedings were commenced or prosecuted against the county treasurer to compel him to comply with the provisions of section 4 of chapter 907 of the Laws of 1869, or the act amendatory thereof. Chapter 296 of the Laws of 1874 was put in evidence.

It is admitted that the New York and Oswego Midland Railroad was exempted from taxation prior to the passage of chapter 296 of the Laws of 1874, and that after that act was passed it was assessed.

At the annual meeting of the Board of Supervisors of Sullivan county in November, 1888, the several towns above-named presented a statement of facts to said board, and demanded in behalf of such towns that the board ascertain the amount of State tax, so-called, collected from the railroad in the several towns, respectively, and used by the county in payment of State tax, and that the board levy said amount upon the taxable property of the county, with interest from the time of using the same by the county, and collect the amount thereof and pay the same into the county treasury, to the credit of the respective towns in proportion to the amount collected from the railroad in said towns to the use and benefit of the same, which the board refused to do.

The plaintiff in these actions, respectively, demand the State tax collected in their respective towns on the railroad from 1874 to 1887, inclusive, and taken and used by the county of Sullivan in the payment of its proportion of the State tax, the same as money collected

from other taxable property of said county, be accounted for by said county and paid to the county treasurer for the use of such towns, for the purpose of purchasing or canceling its outstanding bonds of the town, issued in aid of the construction of the railroad, or for investment as a sinking fund for that purpose.

By chapter 398 of the Laws of 1866, the towns in several counties along the line of the New York and Oswego Midland Railroad, including the towns of Sullivan county, were authorized, upon conditions therein specified, to subscribe to the capital stock of that railroad, and to issue their bonds in payment for or to meet the obligation incurred under such subscription.

Section 16 of that act exempted the railroad corporation from taxation for State, county, town or municipal purposes, until a single track of such road was completed and in operation for a period not exceeding ten (10) years, provided said railroad did not consolidate with any other railroad not wholly or partially constructed.

Section 4 of chapter 907 of the Laws of 1869 provides that " All taxes, except school and road taxes, collected for the next thirty (30) years, or so much thereof as may be necessary, in any town, village or city, on the assessed valuation of any railroad in said town, village or city for which said town, village or city has issued, or shall issue, bonds to aid in the construction of said railroad, shall be paid over to the treasurer of the county in which said town, village or city lies ; and said money so paid over, including interest collected on bonds held by said treasurer as a sinking fund, shall be invested by said treasurer in State, city, town, county or village bonds issued pursuant to law of this State or United States bonds, within sixty days after receiving the same, and shall be held by said treasurer as a sinking fund for the redemption and payment of the bonds issued or to be issued by said town, village or city, to aid in the construction of said railroad."

This act was amended by chapter 283 of the Laws of 1871, and as so amended was held to apply to all towns which have been bonded in aid of railroads, and is, therefore, applicable to the towns in question in these actions, and is not limited to railroads constructed under the act of 1869. (*Matter of Clark* v. *Sheldon*, 106 N. Y., 104.) The law which exempted the real and personal property of this railroad was repealed by chapter 296 of the Laws of 1874.

This repealing act was entitled "An act to subject the real and personal property cf the New York and Oswego Midland Railroad Company to taxation, and to appropriate the amount of the county tax thereon to certain towns, to be applied towards the payment of the interest or principal on certain town bonds."

The first section of this act repeals all laws so far as they exempt real or personal property of the New York and Oswego Midland Railroad Company from taxation.

The second section, in express terms, provides that all moneys collected upon real and personal property of said corporation for county taxes in any of the towns or municipalities by which bonds have been issued in aid of the construction of the New York and Oswego Midland Railroad, and appropriated to such towns and municipalities respectively, and directed the same to be paid over to the railroad commissioners of such town or municipality appointed under the authority of the act to facilitate the construction of said road, passed April 5, 1866.

It is insisted by the plaintiff that the act of 1874, above referred to, repealed chapter 398 of the Laws of 1866 in so far as that act exempted this railroad from taxation, and modified chapter 907 of the Laws of 1869 by directing that the county tax on this railroad should be paid to the commissioners for the use of the town in liquidation or extinguishment of the bonds, leaving the State tax, when collected, to be paid over to the county treasurer as provided by section 4 of chapter 907 of the Laws of 1869, and that that act, with the modifications suggested, is still in force.

On the part of the defendant it is insisted that chapter 907 of the Laws of 1869 is repealed by implication by chapter 296 of the Laws of 1874; that their provisions are so inconsistent with each other that they cannot stand together.

In determining this question it is necessary to examine the provisions of both, and thus determine to what extent the latter is repugnant to the former, and to that extent only will the former be deemed repealed; and in making that investigation we must keep in view the elementary rule of construction that repeals by implication are not favored in law; and at the same time give effect to that other equally well-recognized rule of construction, that when a later statute, not purporting to amend a former one upon the same subject,

not repugnant to the former one in all of its provisions, covers the whole subject, and was plainly intended to furnish the whole law thereon, the former statute will be held to be repealed by necessary implication, although the later statute contains no repealing clause. (*Liddy* v. *Long Island City*, 104 N. Y., 218.)

By the act of 1869 all taxes, except school and road taxes, shall be paid over to the county treasurer, and the moneys so paid over shall be invested by him in a manner provided in the act to meet the liability on the bonds of the town at maturity.

This act was clearly broad enough to cover tax levied as State and county taxes, and by its terms, but for the provisions of section 16 of the Laws of 1866, exempting such road from taxation, the town would be entitled to credit for all State and county tax collected from such railroad.

When the limit fixed in that section expired, or when chapter 296 of the Laws of 1874 took effect, and the immunity of the railroad from taxation was taken away by section 1 of that act, the right of the town to the tax became again fixed under the provisions of section 4 of the act of 1869.

Now, if we could stop with that section, no question, it would seem, could arise as to the right of the town to the benefit of the State and county tax.

Does section 2, which relates only to county tax, affect the right of the town to the State tax under the act of 1869? I think not. Section 1 of the act of 1874 deals exclusively with questions of the railroad exemption from tax, and, in that respect, relates to the county tax, which is affected by that section, but also to the State tax, which is not referred to, or affected in terms by that section, and unless we import into that section something which is not found in it, and which is not necessary to give it effect, it can have no application to the State tax.

The act of 1874 cannot, therefore, I think, be construed to repeal any part of the act of 1869 now under consideration. That act is general and applies to all bonded towns in the State.

The act of 1874 is confined strictly to the Midland towns intersected by that railroad, and all the provisions of the act of 1869 must remain in force as to all railroads of the State which issued bonds under it to other railroads.

All that was effected by the act of 1874 was the repeal of the exemption of the Midland Railroad from taxation and a modification of existing laws, so as to allow the county tax to be appropriated at once by the railroad commissioners to the payment of the interest on the town bonds, leaving in full force the provisions of the act of 1869, so far as it embraced or related to State tax, and leaving that tax to be invested under that act as a sinking fund for the ultimate redemption of such bonds.

This construction does not, seem repugnant to the letter or spirit of the act of 1874, but is in harmony with the general scope of the legislation upon the subject, which seems to be to give the towns the benefit of the tax which was levied upon railroad property within their limits when such property was created or brought into existence by the aid of the indebtedness of such towns. (*Bridges, Supervisor,* v. *The Board of Supervisors,* 92 N. Y., 571.) These two statutes may be read together, and effect given to both, without any impairment of the provisions of either. That being so, they must be permitted to stand together and their provisions enforced.

In *People ex rel. Van Heck* v. *New York Catholic Protectory* (101 N. Y., 20), the court, in discussing this general subject as applied to that case, says: " The enactments can be read together and easily stand together without the least clash or conflict, and where that can be done our duty is to reconcile them and give to each its operative force."

Two statutes shall stand together and both have effect, if possible, for the law does not favor repeals by implication, and all acts in *pari materia* should be taken together as if they were one law.

Laws in *pari materia* must be construed as if they formed part of the same statute, although enacted at different times; such laws are to be construed together as forming a united system and as one statute.

I am, therefore, of the opinion that the act of 1869 is in force as to the State tax, and that the plaintiff in each case is entitled to recover in these actions the State tax paid to and used by the county, with interest. All the other questions raised by the defendants have been settled by recent decisions adverse to the claims of the defendants and in favor of the plaintiff's right to recover. (*Clark* v.

*Sheldon*, 106 N. Y., 104; *Hand* v. *Supervisors of Columbia Co.,* 31 Hun, 531; *Strough* v. *Supervisors of Jefferson Co.*, 50 id., 54, affirmed by Court of Appeals, 119 N. Y., 212, covering several questions; *Bridges* v. *Supervisors of Sullivan Co.*, 92 N. Y., 571.)

This last case seems to hold that as that action was brought to recover the county tax, under the provisions of section 2 of chapter 296 of the Laws of 1874, the State tax, assessed and collected of the railroad, could not be recovered in that action. But it does not follow from that, that State tax which is clearly embraced in the words "all taxes," in section 4 of chapter 907 of the Laws of 1869, cannot be recovered in an action for that purpose when, by the statute, the tax is expressly given to the town or for its use.

As was said in *Bridges* v. *Supervisors :* "The moneys thus specifically given to the town by the statute have been appropriated by the county to its own use."

Nor do I think this is a case where the plaintiffs are concluded by the submission of their claim to the board of supervisors and its rejection by the board. The board did not pass upon and allow a part and reject a part in such a manner as to bind the defendants as a judicial determination. It is not such a case as, within the authorities, the plaintiff would be concluded by the acts of the defendants. in rejecting their claims.

The plaintiffs are entitled to judgment.

*John F. Anderson* and *Lewis E. Carr*, for the appellant.

*T. F Bush*, for the respondent.

LEARNED, P. J. :

The learned justice before whom this cause was tried wrote a very full and careful opinion. We adopt his opinion and shall only examine a few points specially urged on this appeal.

*First.* It is urged that a recovery for the taxes of 1881 is barred by the statute of limitations. This action was commenced December 24, 1888. The cause of action arose when these taxes were misappropriated. (*Strough* v. *Supervisors*, 119 N. Y., 212.) They were so misappropriated when taxes which should have been otherwise used were used for the benefit of the county. (Id.) The court found that the money collected for the year 1881, now in question,.

was so used by the county treasurer on or before February 1, 1883. The amount for that year was $100.50. The appellant urges that, inasmuch as the State tax had been paid by the county before November 10, 1882, the misappropriation must have been made before that time. But the money now in question was not kept separate. It went into the county treasurer's hands, mingled with other money; and on the 10th of November, 1882, he had money on hand not expended, amounting to $248.68, which amount was more than the moneys in question. He could, therefore, at that time, have paid the money in question where it should have been paid. If he had once paid the State by this amount, still it cannot be said that there was a misappropriation, so long as the county treasurer had remaining in his hands moneys raised in the year out of which he might have paid the present claim. There had been a deficit from the previous year, so that the money in his hands did not come from that year.

Again, the appellant claims that the taxes of 1887 could not be included in the recovery, because the finding of the court is that they were misappropriated on or before February 1, 1889, which was after the commencement of the action. There is a special finding that these taxes were not paid or used for the benefit of the county until after January 1, 1889.

The complaint demands a judgment for the amount of these taxes, and that they be levied and collected from the taxable property and paid to the treasurer to cancel bonds of the town, and for investment as a sinking fund. The judgment is to the same effect. This is, then, not simply an action for the recovery of money. It is to compel the levy of the amount; the payment thereof on bonds, and the investment of the same pursuant to statute. It is, then, an action in equity, according to the distinction made in Code (§§ 968, 969), and according to the old law. But it has always been the rule in equity cases that such relief may be granted as the facts existing at the close of the litigation may demand. That rule applies here.

The next point of the appellant is that in chapter 283, Laws of 1871, where the language is: "All taxes except school and road taxes collected," etc., the words "school taxes" refer to the tax imposed by the State for the maintenance of common schools. Hence the appellant insists that the recovery should be reduced by

$476.66, that being the aggregate of the State tax for those years levied to maintain common schools.

We think it is plain that the words "school and road taxes" refer to local taxes for school purposes and for road purposes. The tax imposed by the State is called the State tax, not a canal tax or a school tax or a general fund tax. As remarked in *Clark* v. *Sheldon* (106 N. Y., 110), "it must always be easy for the collector to make the proper deduction of school and road taxes." It would certainly be impossible for him, from any papers in his hands, to deduct that proportion of the State tax which is raised for the maintenance of common schools. The meaning, therefore, of the words "school and road taxes" is plainly intimated in that opinion. It is unnecessary to say more on this.

Another point is that the supervisor of this town, in 1888, submitted this matter to the board of supervisors at its annual meeting and it passed upon the same and decided not to levy the tax. Hence the appellant says that plaintiff's remedy was by *certiorari* or *mandamus*. That such an action as the present will lie is settled by the *Strough Case* (*ut supra*) and by the *Bridges Case* (92 N. Y., 570), and by *Newman* v. *Supervisors* (45 id., 676). The question, then, is whether the application to the supervisors and their refusal is a bar. We think not. There was no adjustment of amount needed. The amount was settled. Possibly a *mandamus* might have issued to compel the board to act. But the plaintiff was not limited to that remedy.

These are the points which are specially brought to our notice. On the general question involved in the case we follow the opinion of Justice MAYHAM at Special Term, without repeating what he has said.

The judgment should be affirmed, with costs.

LANDON, J., concurred.

Judgment affirmed, with costs.