---

(26 Misc. Rep. 464.)

### In re McKEON'S ESTATE.

(Surrogate's Court, Westchester County. February, 1899.)

SURROGATE'S COURT OF WESTCHESTER COUNTY—JURISDICTION—ANNEXATION OF TERRITORY TO NEW YORK CITY.

Laws 1895, c. 934, provides that a certain part of Westchester county "is hereby set off from the county of Westchester and annexed to, merged in and made part of the city and county of New York, * * * and shall thereafter constitute a part of the city and county of New York, * * * subject to the same laws, ordinances, * * * franchises and immunities, in every respect, and to the same extent as if such territory had been included within said city and county of New York at the time of the grant and adoption of the first charter and organization thereof, and had so remained up to the passage of this act." Const. art. 6, § 15, provides that surrogates' courts shall have the jurisdiction and powers which they possessed at the time of the adoption of the constitution, until changed by the legislature. Laws 1895, c. 934, § 3, provides that all the public property of each of the towns and villages in the annexed territory shall be vested in, and become the property of, the mayor, aldermen. and commonalty of the city and county of New York. In 1894 the legislature passed an act providing for the submission to the people, of practically the same territory as that embraced in the act of 1895, of the question of the consolidation of said territory with the city of New York. *Held*, that said territory was annexed for municipal purposes only, and that the surrogate's court of Westchester county was not thereby deprived of jurisdiction to administer the estates of decedents who were residents of such territory.

Petition of James McKeon for letters of administration on the estate of Eliza McKeon, deceased. Granted.

Schatz & Hunt, for petitioner.

SILKMAN, S. A petition is presented by James McKeon, praying for letters of administration upon the estate of his mother, Eliza McKeon, who was, as stated in the petition, "of the town of Westchester, in the said county of Westchester, being territory described in chapter 934 of the Laws of 1895." Counsel for petitioner urges that the surrogate's court of Westchester county has jurisdiction of that part of the territory of Westchester county which was annexed, or is alleged to have been annexed, to the city and county of New York by chapter 934 of the Laws of 1895, passed June 6, 1895, to take effect immediately.

The jurisdiction of the surrogate's court and surrogates is provided for in section 15 of article 6 of the constitution:

"Surrogates and surrogates' courts shall have the jurisdiction and powers which the surrogates and existing surrogates' courts now possess until otherwise ordered by the legislature."

This language of the constitution would seem broad enough to give the legislature the power to transfer a part of the territory of the county of Westchester from the jurisdiction of the surrogate of Westchester county to the jurisdiction of the surrogate of New York county, but whether this has been accomplished by the passage of the annexation statute referred to is the question. That statute provides (section 1):

"All that territory," etc., "* * * is hereby set off from the county of Westchester and annexed to, merged in and made part of. the city and county of New York, and of the Twenty-Fourth ward of the said city and county, and shall hereafter constitute a part of the city and county of New York, and of the Twenty-Fourth ward of said city and county, subject to the same laws, ordinances, regulations, obligations and liabilities, and entitled to the same rights, privileges, franchises and immunities, in every respect, and to the same extent as if such territory had been included within said city and county of New York at the time of the grant and adoption of the first charter and organization thereof, and had so remained up to the passage of this act, and except as may be modified by the provisions herein contained, as if such territory had been included within said Twenty-Fourth ward by the provisions of chapter 613 of the Laws of 1873, entitled, 'An act to provide for the annexation of the towns of Morrisania, West Farms and Kingsbridge, in the county of Westchester, to the city and county of New York,' and the several acts amendatory thereof, and had so remained up to the passage of this act."

The language used is sufficiently comprehensive to include a transfer of the territory described from the county of Westchester to the county of New York for all purposes. Nevertheless, to ascertain whether the legislature so intended, we must examine the act as a whole, examine acts in pari materia, look to the object to be attained within the circumscription of the constitution respecting county lines, and look to the judicial constructions already put upon the act. It is doubtful whether the word "county," in the act of 1895, is used to refer to the political division of the state known as the "County of New York," or only, in a geographical sense, referring to the territory which had been embraced prior thereto within the limits of the city and county of New York. Looking at section 3 of the act, we

find the word "county" used in referring to the corporation of the city of New York. The language is:

"All the public property of each of said towns and villages, as well as the property now vested in the boards of education of said towns and villages, and lying within the territory hereby annexed to the city and county of New York, shall be vested in, and is hereby declared to be the property of the mayor, aldermen and commonalty of the city and county of New York, and the mayor, aldermen and commonalty of the city and county of New York shall succeed to all rights, claims," etc.

The corporate name of the political division of the state known as the "City and County of New York," as it existed prior to the annexation act, was not "The Mayor, Aldermen and Commonalty of the City and County of New York," but "The Mayor, Aldermen and Commonalty of the City of New York." To sustain the legislative transfers of the property belonging to the towns and villages of Westchester county to the corporation of the city of New York, we must construe the act by eliminating the word "county" in the corporate name, and declare such use meaningless. While not necessarily controlling as to the effect to be given to the use of the word "county" in the first section of the act, it shows to some extent the legislative meaning, or rather want of meaning. If any part of a statute be obscure, it is proper to consider the other parts, for the words and meaning of one part of the statute frequently lead to the sense of another. Bac. Abr. tit. "Statute," (I) 2. It was held in Blackwood v. Reg., 8 App. Cas. 94, that:

"One of the safest guides to the construction of sweeping general words, which it is difficult to apply in their full literal sense, is to examine other words of like import in the same instrument, and to see what limitations must be imposed on them. If it is found that a number of such expressions have to be subjected to limitations or qualifications, and that such limitations or qualifications are of the same nature, that forms a strong argument for subjecting the expression in dispute to a like limitation or qualification."

There is also a prima facie presumption that the meaning of a word repeatedly used in a statute is identical in all places, unless there is something to show that another is intended. Reg. v. Poor Law Com'rs, 6 Adol. & E. 68; U. S. v. Central Pac. R. Co., 118 U. S. 235, 6 Sup. Ct. 1038. Statutes in pari materia, which are not inconsistent with one another, should be construed together, and effect given to them, even though they contain no reference to one another. McCartee v. Society, 9 Cow. 438. Laws in pari materia must. be construed as if they formed part of the same statute, although enacted at different times. Such laws are to be construed together as forming a united system and as one statute. Kilbourne v. Board, 62 Hun, 210, 16 N. Y. Supp. 507. In interpreting a given statute, if a subsequent act on the same subject affords demonstration of the legislative sense of its own language, the subsequent act should be incorporated into the act to be construed. Chase v. Lord, 77 N. Y. 1; In re Livingston, 121 N. Y. 94, 24 N. E. 290. Contemporaneous legislation not precisely in pari materia with the statute to be construed may be referred to on the question of intent. Smith v. People, 47 N. Y. 330. It was said in U. S. v. Fisher, 2 Cranch, 386, by Chief Justice Marshall, "Where the mind labors to discover the de-

sign of the legislature, it seizes everything from which aid can be derived."

Under the rules of construction referred to, we have the right to consider the prior and subsequent legislation relating to the enlargement of the city of New York. In 1894 the legislature, by an act (chapter 64) entitled "An act providing for the submission of the question of consolidation of the city of New York with certain territory under a single municipal administration to a vote of the people," provided for taking the sense of the people in the city of New York, and in the territory it was proposed to consolidate with the city of New York. The territory described included the town of West-chester and that portion of the towns of East Chester and Pelham which lies southerly of a straight line drawn from the point where the northerly line of the city of New York meets the center line of the Bronx river to the middle of the channel between Hunter's and Glen Islands, in Long Island Sound. This is the same territory described in the act of 1895, with the exception that the act of 1895 embraced a small amount of territory within the village of Wake-field, lying north of the line referred to. This act of 1894 (section 2) provides as follows:

"The ballots cast in each of said election districts, except in the city of New York, shall be deemed and taken as an expression of the voter, as the case may be, in favor of or.against the consolidation with the city of New York, of the city, county, village, town or part of town mentioned in the first section, in which the said district is situated, and the ballots cast upon said proposition or question in the city of New York shall be deemed and taken as an expression of the voter, as the case may be, in favor of or against the consolidation of the territory mentioned in section 1 of this act under one municipal government."

It is clear, from this act of 1894, that the legislature at that time had no idea of the alteration of county lines, but was merely providing for the consolidation of some of the territory described into one great municipality. After a vote, which was favorable to consolidation, and which was taken as provided for by the law of 1894, in November of that year, the legislature passed the act which we are now trying to construe. In 1896, by chapter 488, the legislature provided for the consolidation of the territory referred to in chapter 64 of the Laws of 1894, excepting that portion which had been annexed by the law of 1895, and also provided for the preparation of a charter. Section 1 of this act provides:

"All the municipal corporations and parts of municipal corporations, other than counties, within the following territory, to-wit: The county of Kings," etc., "* * * are hereby consolidated with the municipal corporation known as the Mayor, Aldermen and Commonalty of the City of New York."

And section 5 of the said act provides:

"Nothing in this act contained shall be construed as attempting or intending to affect, in any way, the boundaries, governments, rights, powers, duties, obligations, limitations or disabilities of any county, or officer thereof, as fixed by the constitution or otherwise."

In 1897 the commission appointed under the act of 1896 reported a proposed charter to the legislature, and it became chapter 378 of the Laws of 1897, and was entitled:

"An act to unite into one municipality under the corporate name of The City of New York, the various communities lying in and about New York Harbor, including the city and county of New York, the city of Brooklyn and the county of Kings, the county of Richmond, and part of the county of Queens, and to provide for the government thereof."

This act does not attempt, in any way or for any purpose, to annex the territory of the counties of Kings, Richmond, or Queens to the county of New York, except for the administration and government thereof as the city of New York. The counties of Kings, Richmond, and Queens are preserved as political divisions of the state. Their county officers still remain, exercising the powers that were exercised by them prior to the consolidation into one great city. Examining the Greater New York charter act (section 2), we find the city of New York divided into five boroughs; the borough of Manhattan embracing Manhattan Island, and certain other islands adjoining, and the borough of the Bronx containing all the territory northerly or easterly of the borough of Manhattan between the Hudson and East rivers. The borough of the Bronx would therefore include the territory of the towns of Westchester, East Chester, and Pelham, annexed by the law of 1895. Turning to section 1345, we find reference to the city court of New York, providing for its continuance, and providing that the court and justices thereof shall have the same powers and jurisdiction that are now conferred upon them by law: "Provided, however, that in sections 338, 3165, 3169, 3170 and 3268 of the Code of Civil Procedure, the word 'city' shall be construed to mean and apply to the territory within the city of New York as it existed and was constituted prior to the 6th day of June, 1895" (the date of the passage of the annexation act); thus excluding from the jurisdiction of the city court of New York, which is the only court of civil jurisdiction between the municipal court and the supreme court other than the surrogate's, the territory annexed by the law of 1895. The charter provides for municipal courts in all the boroughs of Greater New York,—two in the boroughs of the Bronx; the First district of that borough embracing the territory described in chapter 934 of the Laws of 1895. We have, therefore, a general scheme of civil jurisdiction for the entire Greater New York, with the exception of the territory affected by the act of 1895. The county of Richmond has a municipal court, its existing county and surrogate's courts. The counties of Kings and Queens have the same. The city of New York, exclusive of the territory embraced in the act of 1895, has its municipal courts, its city court, and its surrogate's court. It is fair to assume that the legislature intended to make a homogeneous system of government for all parts of the territory embraced within the city of New York, and it is not to be presumed that it intended to leave a small portion of the borough of the Bronx with no intermediate court of civil jurisdiction between the municipal and the supreme court. This would lead to the conclusion that the legislature intended the county court of Westchester county should still have jurisdiction of that territory included in the act of 1895, the same as the county judges of Kings, Queens, and Richmond have the

same jurisdiction over that part of the city of New York which was under their jurisdiction prior to the passage of the Greater New York charter. It would also lead to the conclusion that such territory was still a part of Westchester county for judicial purposes, excepting as to the jurisdiction of the municipal court. If the act of 1895 is to be construed as not intending to oust the county court of jurisdiction, it logically follows that it did not intend to oust the surrogate's court of jurisdiction, the county judge acting as surrogate upon the latter's disability. It has already been held by the court of appeals (People v. Board of Sup'rs of Westchester Co., 147 N. Y. 1, 41 N. E. 563) that, for the purpose of apportionment of assembly districts, the annexed territory is still within the jurisdiction of the board of supervisors of Westchester county, and that it is still within the Second judicial department, and is part of the county of Westchester for the purpose of voting for senator, members of assembly, and justices of the supreme court. The court of appeals say:

"The voters in the annexed territory will be entitled to vote for senator, members of assembly, and for justices of the supreme court, the same as though the annexation act had not been passed."

Thus we have had already carved away by the highest court some of the effect of the word "county" as used in the first section of the act of 1895. In the case of Zeimer v. Rafferty, 18 App. Div. 397, 46 N. Y. Supp. 345, Justice Bartlett, referring to article 6, § 2, of the constitution, said:

"As the Second judicial department must be bounded by county lines, under this constitutional provision, and as the court of appeals has already held that the annexed district is still a portion of that department, it follows that for some purposes, and those more particularly connected with the administration of justice, the annexed district continues to be a part of the county of Westchester. We think it yet remains so much a portion thereof that persons who live there are to be deemed residents of Westchester county for the purpose of determining the venue of an action in the supreme court, under section 984 of the Code of Civil Procedure."

It was held by Justice Smythe, in a case (In re Conklin, 57 N. Y. Supp. 844) reported in the New York Law Journal of August 3, 1897, that that part of the county of Westchester which was annexed to the city of New York under chapter 934 of the Laws of 1895 still remains, for all judicial purposes, the county of Westchester; and who also held that an order for examination in supplementary proceedings must be returnable in the county of Westchester, the judgment debtor living in the annexed district. In a case before Justice Truax (Levy v. Brown; reported in 59 N. Y. Supp. ——), it was held that an execution against the property of a resident of the annexed district should have been issued to the sheriff of Westchester county.

The conclusion strongly addresses itself to the mind that the legislature never intended to annex any part of the county of Westchester to the city and county of New York, except for city purposes; that it did not intend that the part of Westchester county which it annexed should have any different status than that part of the county of Queens which was annexed. At the time of the passage of the 1895 act the enlargement of the city was a matter of

large public interest and notoriety, and had had legislative considera-
tion in the 1894 act. The purpose and intention had been clearly
expressed, which were not the enlargement of the county, but the
creation of a great city; but the plan by which it should be accom-
plished had not then been formulated. The legislature, however, in
its wisdom, anticipated the adoption of the entire Greater New York
project by the annexation of a part of Westchester county. That
their purpose was not clearly expressed in their act cannot be ques-
tioned. The act was carelessly prepared, and lacked that considera-
tion which was accorded to the subsequent acts of the legislature on
the same subject. Giving to the words of the statute their fullest
significance, the constitution would be violated. At the time of the
adoption of the Greater New York charter the legislative intention
for the Greater New York had fully crystalized, and a complete and
harmonious plan was put in operation. This plan left counties
undisturbed, while at the same time the object of a greater city was
attained. The act of 1895 should be read together with the acts of
1894, 1896, and 1897, and the legislative intention gathered from
the whole. It is unnecessary, however, for this court, in the case
before us, to decide more than that for judicial purposes, including
its jurisdiction to grant letters, there has been no change in the
county of Westchester, and it is unaffected by the act of 1895, c. 934.

An order may be entered that letters of administration issue to the
petitioner. Decreed accordingly.