the Special Term, so that it will not be necessary to send the case back for a new trial. The contract price was $13,200. The plaintiff had been paid, prior to his default, $4,500. The owner expended in completing the work, after plaintiff's default, $7,821.53. The plaintiff is entitled to judgment for the difference between the sums of the last two amounts ($12,321.53) and the contract price of $13,200, being $878.47, with interest.

The judgment appealed from must therefore be reversed, and a judgment directed in favor of the plaintiff for $878.47, with interest, but without costs in this court or the court below, because of the greatly exaggerated claim for damages embraced in the complaint.

Settle order on notice. All concur.

---

(140 App. Div. 769.)

PEOPLE ex rel. VILLAGE OF COBLESKILL v. BOARD OF SUP'RS OF SCHOHARIE COUNTY.

(Supreme Court, Appellate Division, Third Department. November 16, 1910.)

1. TAXATION (§ 916*)—TAX ON BANK STOCK—APPORTIONMENT—STATUTES.

Under Tax Law (Consol. Laws, c. 60) § 24, imposing a tax on bank stock, and requiring the county board of supervisors to ascertain the tax rate of each tax district in which the shares of stock shall be taxable, and apportion the tax accordingly, and Laws 1908, c. 330, § 99, exempting the property within an incorporated village from taxation in the town for highways, the supervisors in apportioning the tax on bank stock of banks in a village within a town must make the apportionment on the tax rate in the village and the tax rate in the town, excluding the tax rate in the town for highway purposes.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 916.*]

2. TAXATION (§ 916*)—TAX ON BANK STOCK—APPORTIONMENT—STATUTES.

A village accepting that part of a tax on bank stock which it is conceded it is entitled to receive under an apportionment between it and the town within which it is situated is not estopped from asserting that it is entitled to a greater amount because of an error made by the county board of supervisors in apportioning the tax between the village and the town.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 916.*]

3. PARTIES (§ 75*)—DEFECT OF PARTIES—WAIVER.

A defect of parties appearing on the face of the complaint is waived unless taken advantage of by demurrer.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 115, 116; Dec. Dig. § 75.*]

4. MANDAMUS (§ 151*)—APPORTIONMENT OF TAXES BETWEEN VILLAGE AND TOWN—PARTIES.

In mandamus on the relation of a village to compel the board of supervisors of the county to apportion taxes on bank stock between the village and the town by excluding the rate of taxes in the town for highway purposes the county treasurer is not a necessary party.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 151.*]

5. TAXATION (§ 916*)—MANDAMUS (§ 114*)—ERRONEOUS APPORTIONMENT OF TAXES BETWEEN VILLAGE AND TOWN.

Where the county board of supervisors erroneously apportioned a tax on bank stock between a village and a town by giving the town a larger amount than it was entitled to, and the tax was paid to the village and town according to such apportionment, the board should in the next tax

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

levy provide for an assessment on the town to recover the money improperly paid to it, and mandamus lies to compel the board to correct the error in this manner.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 916;* Mandamus, Dec. Dig. § 114.*]

6. MANDAMUS (§ 117*)—ERRONEOUS APPORTIONMENT OF TAXES BETWEEN VILLAGE AND TOWN—REMEDY.

A county board of supervisors apportioning the tax on bank stock as required by Tax Law (Consol. Laws, c. 60) § 24, does not exercise judicial functions, but its function is merely ministerial, and mandamus lies to control its action.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 117.*]

7. MANDAMUS (§ 151*)—PARTIES DEFENDANT—PUBLIC OFFICERS.

A relator, entitled to enforce by mandamus a right against a county, may enforce the right either against the board of supervisors of the county which originally violated his right or against their successors in office, and the right is not lost by the delay of the court to award the remedy before the expiration of the term of office of the members of the board violating the right.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 151.*]

Kellogg, J., dissenting.

Appeal from Special Term, Schoharie County.

Mandamus by the People, on the relation of the Village of Cobleskill, against the Board of Supervisors of Schoharie County. From a judgment for defendant, relator appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Charles H. Holmes (Charles E. Nichols, of counsel), for appellant.
George L. Danforth (George M. Palmer, of counsel), for respondent.

SMITH, P. J. The relator here appeals from the final order in a mandamus proceeding dismissing its petition. Within the town of Cobleskill is situated the village of Cobleskill. This village forms a separate road district, a separate school district, and a separate tax district. In 1908 there were in said village of Cobleskill two banks, with an assessed valuation of $266,240.67. By these banks there was paid in taxes $2,662.41. Section 24 of the tax law (Consol. Laws, c. 60) provides:

"The tax hereby imposed shall be distributed in the following manner: The board of supervisors of the several counties shall ascertain the tax rate of each of the several town, city, village, school and other tax districts in their counties, respectively, in which the shares of stock of banks and banking associations shall be taxable, which tax rates shall include the proportion of state and county taxes levied in such districts, respectively, for the year for which the tax is imposed, and the proportion of the tax on bank stock to which each of said districts shall be respectively entitled shall be ascertained by taking such proportion of the tax upon the shares of stock of banks and banking associations, taxable in such districts, respectively, under the provisions of this chapter as the tax rate of such tax district shall bear to the aggregate tax rates of all the tax districts in which said shares of stock shall be taxable."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

By reports of the several clerks it appeared that the tax rate in the village of Cobleskill was $1.53 upon every $100. In the town of Cobleskill there were two rates: One rate of 43 cents, which was applicable to the whole town, including the village property, as well as the property outside of the village; the other, an additional rate of 25 per cent. upon the property outside of the district for highway purposes in that special road district, which did not include the village of Cobleskill. This double rate arises by reason of section 99 of chapter 330 of the Laws of 1908. That section reads as follows:

"In any town in which there may be an incorporated village, which forms a separate road district, and wherein the roads and streets are maintained at the expense of such village, all property within such village shall be exempt from the levy and collection of taxes levied in the town, as provided by section ninety-one of this article, for the repair and improvement of highways, including sluices, culverts and bridges having a span of less than five feet. The assessors of such town shall indicate in a separate column the value of the real and personal property included in such incorporated village."

The learned judge at Trial Term has held that within the meaning of section 24 of the tax law the town rate must be ascertained by adding the percentage of 43 and 25, making 68 cents upon each $100, while the village rate is fixed at $1.53 upon each $100; thus giving to the village $153/221$ of the bank tax and to the town $68/221$. Relator's contention upon this appeal is that the town rate should be fixed at 43 cents upon each $100, and should not include the 25 cents upon each one hundred dollars, which is levied only upon property outside of the village of Cobleskill for the highways outside of said village. This holding of the trial court presents the only question here for review.

Prior to 1901 bank stock was assessed to individual owners, but it was all assessed in the tax district in which the bank was located. Under the law, as it then existed, it will not be claimed that such stock was assessable for any part of the highway tax for the district outside of the village of Cobleskill. If such law were now in force this bank stock would be assessable at the rate of 153 for the village of Cobleskill and 43 for the town of Cobleskill. Under the former law the stockholder, however, could swear off that tax by showing a personal indebtedness to the amount thereof. In 1901 the statute was changed so as to provide for a tax of 1 per cent. upon the values of such shares of stock, and taking away from the stockholder the right to swear off those taxes by showing a personal indebtedness. With this rate of one per cent. fixed by the statute it became necessary to distribute that tax between the different tax districts to which this property should properly contribute. To my mind it is inconceivable that the Legislature intended that the tax upon this property should be apportioned to any other or different districts than those to which it was apportionable under the former law. It cannot be material what may be technically called the tax rate of the town. The real property of the bank pays only the village rate and 43 cents of the town rate. No reason is suggested why the personal property of the bank or the stock should pay a different ratio to the town, or should be made to pay any part of the tax for the care of roads outside of

the village. From this road tax the property within the village is specially exempted by section 99 of chapter 330 of the Laws of 1908. The tax law should be read in connection with this section of the Laws of 1908, and, as so read, this bank tax should be distributed between the village and the town in the same ratio as it had theretofore been distributed, and the Trial Term we think erroneously allowed the 25 cents to be included in the town tax rate in estimating the proportion of the bank tax payable to the town.

Several preliminary objections are urged to this proceeding. It is claimed that the village accepted the proportion assigned to it, and, therefore, is precluded from questioning the method by which that proportion was reached. But the amount accepted concededly belonged to the village. No readjustment can lessen that amount, and there can, therefore, be no estoppel as against the village by reason of its acceptance thereof. It may still claim that it was entitled to a greater percentage. It is further claimed that the county treasurer is a necessary party. It might well be answered that the defect appeared upon the face of the complaint and was waived by not demurring. People ex rel. Bacon v. N. C. Ry. Co., 164 N. Y. 297, 58 N. E. 138. In my view, however, of the relief to which the relator is entitled the county treasurer is not in any way a necessary party. It is further claimed that these moneys had been paid over in good faith both to the village and the town, and that neither the board of supervisors nor the county treasurer can take back from the town that which has been paid to it and pay over additional moneys to the village. But the relator is entitled to some relief. The mere payment to the town cannot bar his rights. It may be that the county treasurer cannot recover back this amount from the town and probably should not be held personally responsible for the payment made in accordance with the determination of the board of supervisors. The board of supervisors may, however, in the next tax levy, provide for an assessment upon the town to recover these moneys improperly paid to the town and for the correction of this error, and to this end the writ should be granted. In People ex rel. Keene v. Supervisors, 142 N. Y. 278, 36 N. E. 1062, in the opinion it is said:

"The court, in awarding the peremptory writ, may mould it according to the just rights of all the parties."

Finally, it is objected that the relator has mistaken his remedy; that the determination by the board of supervisors is judicial, and should be reviewed only by certiorari. To this proposition we do not agree. The functions of the board were simply ministerial. They were not judicial. The board was to take the tax rate as furnished them by the clerk of the village and of the town and make its computations thereupon. It did not lie with the board to question whether the tax rate was properly made by the town or by the village, and there was no judicial function involved in making the apportionment. People ex rel. Schau v. McWilliams, 185 N. Y. 96, 77 N. E. 785; People ex rel. Lawyer v. Supervisors of Schoharie County, 39 Misc. Rep. 162, 79 N. Y. Supp. 145; People v. Board of Supervisors, 131 N. Y. 471, 30 N. E. 488.

Another question not suggested in the briefs of counsel is suggested by one of my colleagues—that the terms of office of the supervisors who made this erroneous determination had expired, and that a new board cannot be mandamused to correct the error of an old board. This determination was made in the fall of 1908. The alternative writ of mandamus was issued in February, 1909, while the same supervisors were still in office. It was tried in October, 1909, but was not determined until February, 1910, after their terms of office had expired. It cannot be that the law's delays will forfeit a right which existed at the time of the commencement of the proceeding. This proceeding while in form against the supervisors, was in fact against county officers as such, and if the board which committed the error could be compelled to reconvene and correct their error, it is not reasonable to hold that a new board cannot be mandamused to perform the duty which clearly rests upon the supervisors as officers of the county. In People v. Supervisors of Chenango, 8 N. Y. 318, it is held:

"Where the supervisors of a county have neglected to perform any duty required of them at their annual meeting, they may be compelled by mandamus to meet again and perform it. They cannot by their neglect nullify a statute imposing duties upon them."

That was a mandamus proceeding to compel the supervisors to issue warrants for certain military commutation, under an act passed April 16, 1851 (Laws 1851, c. 180). In that case, as in this, before the legal proceeding became effective the personnel of the board of supervisors had changed. At page 330 of 8 N. Y., the opinion of the court reads:

"The supervisors are required to meet annually in their respective counties for the dispatch of business, and they may hold special meetings at such times and places as they may find convenient. Their neglect to perform their duty at the time required cannot nullify the statute. They or their successors are bound to do what was required, and, on failure to perform it, may be compelled by mandamus and in some cases are liable to a penalty for their neglect. (Citing cases.) The omission of the plaintiffs in error to do their duty at the proper time, though it has thrown some embarrassment in the way, does not render a substantial compliance with the statute impossible. The supervisors, or the successors of those then in office, can be convened, and can issue their warrant for the commutation tax. The mandamus was a proper way to compel them to proceed, and I think that the judgment of the Supreme Court should be affirmed."

This case was cited with approval and followed in People ex rel. La Chicotte v. Best, 187 N. Y. 17; 79 N. E. 890, 892 (116 Am. St. Rep. 586), in which the opinion in part reads:

"We consequently conclude that, where a proceeding is against an officer of the municipality for the enforcement of a right of a relator against the municipality, the proceeding does not abate by the resignation, removal, or expiration of term of the officer, but that it may be enforced against his successor or successors."

These authorities would seem to hold that the relator with a clear right against the county may enforce that right either against the board which originally violated his right or against the successors of that board. To hold that the right was lost by the delays of the court

to award him his remedy would subject the administration of the law to just criticism. In 26 Cyc. 423, it is stated:

"Where defendant is a court or a board consisting of more than one officer or person, the courts have been more uniform in applying the rule that no abatement takes place, where, pending the mandamus proceedings, there is a change in the personnel of the board, council, commission or the like, provided, of course, the board has not performed all of its functions and actually gone out of existence. And the reason for this is plain, for, while the constituent members of the court or board may not be the same, the representative body remains identical. The personnel of the judges or officers may change, but the court or board retains its identity and is in a sense the same."

It may be necessary before the writ is finally awarded to substitute a new board as parties in the proceeding.

The final order should therefore be reversed on law and fact, and a new trial granted, with costs to the relator to abide the event.

Final order reversed on law and facts, and new trial granted, with costs to abide event. All concur, COCHRANE, J., in result, except KELLOGG, J., dissenting in memorandum.

JOHN M. KELLOGG, J. (dissenting). As said in People ex rel. Bridgeport Savings Bank v. Feitner, 191 N. Y. 88, 100, 83 N. E. 592, 596:

"It is evident that the scheme of taxing bank shares, not only in respect to the amount, but also as to the method and manner of its imposition, stands by itself, independent and separate from that prescribed for the assessment and taxation of other property."

We must then construe the language of the statute according to its ordinary meaning, and gain but little advantage by inquiring how, under the old law, the bank tax was disposed of. The statute requires this tax to be apportioned between the town and village according to their respective tax rates. There is properly but one tax rate in the town as a town rate.

It is true that the village property is exempt from paying any taxes in the town on account of certain highways of the town to equalize the town and village, because the village maintains its own highways. The fact that certain property in a town is exempt from certain taxes of the town does not change the tax rate of the town. In obtaining the village rate the highway expenses of the village are included, and I see no reason why the town rate should not be obtained by including the highways of the town. It certainly presents equality if the village rate, which includes the village highway tax, is compared with the town rate, which includes the town highway tax. I think the decision is right and should be affirmed.