(88 Misc. Rep. 591)
### CITY OF BUFFALO v. ERIE COUNTY.

(Supreme Court, Trial Term, Erie County.　January 22, 1915.)

1. TAXATION (§ 913*)—TAXATION OF BANKS—DISTRIBUTION—RIGHTS OF CITY —STATUTES—CONSTRUCTION.

Tax Law (Consol. Law, c. 60) §§ 23, 24, provides for the assessment of bank stock, and authorizes the distribution and apportionment of such taxes between the town, city, village, school, or other tax districts in the respective counties in which the stock is taxable; and section 2 defines a tax district as a political subdivision of the state having a board of assessors authorized to assess property for state and county purposes. *Held* that, where taxes were assessed on the stock of banks in the city of Buffalo and collected by the county treasurer, the amount so collected, less the county treasurer's fees, was payable to the city, and that the county had no right to any part thereof.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1746–1750; Dec. Dig. § 913.*]

2. TAXATION (§ 913*)—DISTRIBUTION—ACTS OF SUPERVISORS.

Since the duty of the county board of supervisors with reference to such taxes was only to order a warrant drawn in favor of the city for the amount of the taxes, there was no judicial function involved in making an apportionment; and hence the city's remedy was not limited to certiorari to review the action of the board in apportioning the taxes, it being entitled to recover them in an action at law against the county.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1746–1750; Dec. Dig. § 913.*]

3. TAXATION (§ 913*)—MISAPPORTIONMENT—CORRECTION—ESTOPPEL.

Where the whole amount of a bank stock tax collected by a county treasurer was payable to a city in which the banks were located, the city, by making no objection to an illegal apportionment of the tax by the county board of supervisors, as between the city and county, for several years, and until June, 1911, did not estop itself to recover the part of the tax so illegally withheld.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1746–1750; Dec. Dig. § 913.*]

4. LIMITATION OF ACTIONS (§ 183*)—PLEADING.

An allegation in defendant's answer that the several causes of action set forth in the complaint were barred by limitations in such cases made and provided was not sufficient in form to render the statute of limitations available as a defense.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 683–695; Dec. Dig. § 183.*]

5. LIMITATION OF ACTIONS (§ 184*)—ANSWER—AMENDMENT.

Where defendant pleaded limitations defectively, an amendment would be allowed.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 693; Dec. Dig. § 184;* Pleading, Cent. Dig. § 796.]

6. LIMITATION OF ACTIONS (§ 57*)—ACCRUAL—DISTRIBUTION OF TAXES.

Tax Law, § 24, provides that the board of supervisors shall issue their warrant or order to the county treasurer on or before December 15th in each year, commanding him to collect bank taxes and to pay to the proper officer in each of the political subdivisions the proportion of such tax to which it is entitled under the provisions of the chapter. *Held*, that the neglect or refusal of the board to direct the county treasurer to pay over to a city the entire bank tax collected from banks located in the city was a violation of duty imposed by law, and gave the city a complete cause of action to recover the whole tax, which arose on the 1st day of

January succeeding their payment, so that the statute of limitations began to run, as against the city's right to recover the same, on that date, and barred the city's action, unless commenced within six years thereafter.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 155, 312–323; Dec. Dig. § 57.*]

Action by the City of Buffalo against Erie County. Judgment for plaintiff.

William S. Rann and Harry D. Sanders, both of Buffalo, for plaintiff.

Carleton White and Thomas A. Sullivan, both of Buffalo, for defendant.

WHEELER, J. This action is brought to recover certain moneys paid to the treasurer of the county of Erie, and retained in violation of the Tax Law, being portion of the tax paid by various banks located in the city of Buffalo pursuant to the provisions of sections 23 and 24 of the Tax Law.

Section 23 of the Tax Law requires the chief fiscal officer of each bank and banking association organized under the authority of the state or of the United States, annually on or before July 1st, to furnish the assessors of the tax district in which its principal office is located a statement under oath of the condition of the bank on the 1st day of June next preceding, stating the amount of its authorized capital, the par value thereof, the amount paid in, the amount of its surplus and undivided profits, and a complete list of the names and residences of its stockholders, and the number of shares held by each. It thereupon becomes the duty of such board of assessors to make an assessment roll, by which it assesses the stock of all such banks and banking associations.

Section 24 provides the manner of ascertaining the value of each share of stock, and fixes the rate of tax upon such shares at one per centum of the value thereof. The board of supervisors in each county is required, on or before December 15th in each year, to ascertain from an inspection of the assessment rolls in their respective counties the number of shares of stock in banks in each town, city, village, school, and other tax district, the names of the banks issuing the same, and the assessed value of the shares, and mail to the president or cashier of each of such banks a statement setting forth the amount of its capital stock, surplus, and undivided profits, the number of outstanding shares thereof, the value of each share of stock taxable in such county, as ascertained in the manner provided above, and the aggregate amount of tax to be collected and paid by such bank. A certified copy of each of such statements must be sent to the county treasurer. It is the duty of each bank to collect from its stockholders the tax due from each, and pay the same to the treasurer of the county. The taxes so imposed are distributed among the several tax districts in which the banks, whose stocks are so taxed, are located, in proportion to the tax rate of such districts. The clerks of the cities, villages, school, and other tax districts are required to re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

port the rate in writing and under oath to the board of supervisors annually. The duty is cast upon the board of supervisors, on or before the 15th day of December in each year, to issue a warrant to the county treasurer directing him to collect the taxes so imposed, and to pay them to the proper officer of each tax district in the proportions above stated.

Pursuant to the provisions of the Tax Law above outlined, there were assessed against the shares of stock of the various banks located within the city of Buffalo, and paid by said banks to the county treasurer of Erie county in and for each of the years from 1902 to 1910, inclusive, the following amounts: 1902, $70,577.06; 1903, $79,-280.23; 1904, $76,601.48; 1905, $83,500.40; 1906, $88,292.13; 1907, $92,936.67; 1908, $98,564.06; 1909, $104,607.15; 1910, $120,691.58. Under the statute, the county treasurer is entitled to a fee of 1 per cent. of the amounts so collected. The table below shows, for the respective years mentioned, the amounts so paid to the county treasurer by banks located within the city of Buffalo, less the fee of the county treasurer, in the first column; the amount paid by the county treasurer pursuant to the warrant of the board of supervisors to the city of Buffalo, in the second column; and the amount of said moneys retained by the county treasurer for each of said years, in the third column:

| | | | |
|---|---|---|---|
| 1902 | $ 69,871.29 | $ 44,072.00 | $25,799.29 |
| 1903 | 78,487.43 | 64,246.23 | 14,241.20 |
| 1904 | 75,835.47 | 64,392.47 | 11,443.00 |
| 1905 | 82,665.40 | 70,626.94 | 12,038.46 |
| 1906 | 87,409.21 | 75,138.65 | 12,270.56 |
| 1907 | 92,007.31 | 80,387.60 | 11,619.71 |
| 1908 | 97,578.42 | 83,137.35 | 14,441.07 |
| 1909 | 103,561.08 | 88,619.34 | 14,941.74 |
| 1910 | 119,484.67 | 104,355.40 | 15,129.27 |

The plaintiff received the amounts so paid by the county treasurer and made no demand for any greater sum until about February 1, 1911, when the comptroller addressed the following written demand to the board of supervisors of the county of Erie:

"Buffalo, N. Y., Jan. 31, 1911.

"To the Honorable the Board of Supervisors of Erie County—Gentlemen: Pursuant to the provisions of chapter 550 of the Laws of the state of New York of 1901, I hereby demand that you apportion to the city of Buffalo the entire tax collected upon the capital and surplus of the banks within the limits of the city of Buffalo, less a one per cent. fee which is payable to the county treasurer under the provisions of the act for the year ending December 31, 1910.

"Respectfully submitted,  [Signed]  William G. Justice, Comptroller."

Said communication was referred by the board of supervisors to its committee on finance, which notified the city to appear before it at the time when the communication was under consideration. The city was represented by the comptroller and by counsel, but the committee made a report in favor of refusing payment, and its report was adopted by the board. Shortly thereafter this action was commenced. It would seem that the county retained the sums named by reason of an erroneous interpretation of the statute, and upon the supposi-

tion that the county was entitled to share in a division of the taxes paid by the banks. It is evident from the reported cases that Erie county was not the only county in the state acting on this erroneous construction of the Tax Law.

[1] The proper construction of the Tax Law, however, arose in the case of City of Utica v. Board of Supervisors of Oneida County, 109 App. Div. 189, 95 N. Y. Supp. 839, and it was there held that sums assessed and collected on shares of stock of banks located in cities should be paid to such cities, and should not be apportioned to the county. This conclusion was reached by the court by reason of the wording of section 2 of the Tax Law defining a "tax district" in the following words:

" 'Tax district,' as used in this chapter, means a political subdivision of the state for a board of assessors authorized to assess property therein for state and county purposes"

—the court holding that by virtue of this section, when construed in connection with section 24 of the law, the city alone was entitled to bank taxes paid. The decision in City of Utica v. Board of Supervisors, 109 App. Div. 189, 95 N. Y. Supp. 189, has been followed in later cases. People ex rel. Cobleskill v. Supervisors, 140 App. Div. 769, 126 N. Y. Supp. 259; People ex rel. Lawyer v. Supervisors, 39 Misc. Rep. 162, 79 N. Y. Supp. 145; People ex rel. City of Geneva v. Board of Supervisors, 188 N. Y. 1, 80 N. E. 381. Although in the last-named case the Court of Appeals did not directly pass on the question, a reading of the opinion would indicate that it assumed a construction in harmony with that followed in the other cases cited.

We must assume, therefore, for the purposes of this action, that the entire bank tax for the years named, less the county treasurer's fees, should have been paid over to the city of Buffalo. The decisions cited preclude this court from adopting any different holding. Indeed, in this case the counsel for the defendant concedes that such is the force and effect of the decisions of the courts.

[2] Nevertheless defendant's counsel contend, in substance, that when the board of supervisors undertook to make an apportionment of the bank taxes between the city and the county, it acted in a judicial capacity, and that if in its action it erred the only proper and legal way in which the action could be reviewed was by writ of certiorari; that the city neglected to take any such steps, and as the four months' statutory time in which to take such proceedings has long since expired the action of the board of supervisors must be deemed final, and the moneys retained cannot be recovered by action. This identical point was raised in the case of People ex rel. Village of Cobleskill v. Supervisors, 140 App. Div. 773, 126 N. Y. Supp. 259, and the court held that the determination by the board of supervisors was simply ministerial, and not judicial, and that "there was no judicial function involved in making the apportionment. People ex rel. Schau v McWilliams, 185 N. Y. 96 [77 N. E. 785]; People ex rel. Lawyer v. Supervisors, 39 Misc. Rep. 162 [79 N. Y. Supp. 145]; People ex rel. Trustees v. Board of Supervisors, 131 N. Y. 471 [30 N. E. 488]." Under the construction placed on the statute,

all the board of supervisors of Erie county had to do was to order a warrant drawn in favor of the city for the amount of the bank taxes. Certainly it cannot be seriously contended that such a resolution involved the exercise of judicial functions. See, also, People ex rel. Lawyer v. Supervisors, 39 Misc. Rep. 165, 79 N. Y. Supp. 145, holding the same doctrine, and also Kilbourne v. Board of Supervisors, 137 N. Y. 170, 33 N. E. 159.

It is further urged on behalf of the defendant that the city is now estopped from asserting a right to the entire amount paid by bank taxes, because it has, without protest or objection, acquiesced in the apportionment of the taxes between the city and county, and permitted the county to use the moneys so realized for general county charges. No evidence was offered on the trial as to how the taxes retained were in fact used or disposed of; but in all probability they went into the general fund of the county, and were used in the payment of the general expenses of the county, and also in the payment of the county's proportion of state taxes.

[3] The evidence shows that no demand was made for the entire tax prior to the letter of January 31, 1911. It is claimed that, by accepting an amount less than it was legally entitled to receive, the city cannot now insist on the payment of the balance. This precise question was raised in the case of People ex rel. Village of Cobleskill v. Supervisors, 140 App. Div. 769, 772, 126 N. Y. Supp. 259, and it was there held that the amount paid concededly belonged to the village, and no readjustment could lessen that amount, and that therefore there could be no estoppel against the village by reason of the acceptance thereof.

In the case of Strough v. Board of Supervisors, 119 N. Y. 212, 23 N. E. 552, it appeared that a county treasurer, instead of applying taxes assessed on the property of a railroad corporation in a town to a fund for the redemption of bonds of a town issued in aid of the construction of the road as required by statute, applied them in payment of county and state taxes. In an action to recover those moneys by the supervisor, acting for the town, it was claimed the town had lost its remedy by acquiescence and laches. Judge Andrews, speaking for the court, said:

"It appears that for a period of 14 years the town of Orleans was represented by its supervisors in the board of supervisors, who was apprised from year to year of the disposition made by the county treasurer of the railroad taxes in the town—that is, that they formed a part of the aggregate fund out of which the state and county charges were paid—and that the supervisor of Orleans made no objection until the year 1887. It is insisted that the town of Orleans, having during this period had the benefit of the taxes collected from the railroad by their application to county purposes, thus diminishing its taxation pro tanto for those purposes, is estopped from now insisting that the county should repay the money, although the application was unauthorized. The answer is obvious. If the county is compelled to restore the money wrongfully diverted, it will simply reinstate the county and the several towns to their prior position. The county has had the benefit of the money belonging to the town of Orleans. * * * The town of Orleans, moreover, cannot be estopped by the neglect of its supervisor to assert a claim, the grounds of which were equally known to all the members of the board."

In view of these decisions, we are constrained to hold that the city of Buffalo is not estopped from recovering the balance of bank tax moneys paid to the county treasurer. These moneys may be recovered in an action at law such as here brought. Bridges v. Board of Supervisors, 92 N. Y. 570; Strough v. Supervisors, 119 N. Y. 212, 23 N. E. 552; Woods v. Board of Supervisors, 136 N. Y. 403, 32 N. E. 1011.

[4] There remains for consideration the defense of the statute of limitations as to a portion of the taxes sought to be recovered. That clause of the answer pleading the statute is in the following form, to wit:

"For a sixth, further, and separate answer and defense the defendant alleges: That the several causes of action set forth in the complaint are barred by the statute of limitations in such cases made and provided."

[5] The answer does not appear sufficient in form to make the defense available to the defendant without amendment. A motion to so amend was made by counsel for the county. The court has concluded to permit the amendment asked, in order to save the defendant's rights, especially as such amendment will not cause surprise to the plaintiff, and in our opinion does not set up a new defense, but is by way of amplification of a pleading imperfectly drawn. With the amendment allowed, we are of the opinion that a case has been made out for the application for the statute of limitations. In the case of Strough v. Board of Supervisors, 119 N. Y. 212, 23 N. E. 552, it was held that, where a county treasurer had misappropriated money received for railroad taxes belonging to a town, the statute of limitations began to run when the misappropriation is made, and an action brought more than six years thereafter was barred. The city authorities must have known that, when the county retained a portion of the bank taxes, they were withheld under the claim of right to share in them and to devote the portion retained to its own purposes.

[6] By the twenty-fourth section of the Tax Law it is made the duty of the board of supervisors to issue their warrant or order to the county treasurer on or before the 15th day of December in each year, setting forth the tax rate, etc., "commanding him to collect the same" (i. e., the bank taxes) "and to pay to the proper officer in each of such districts the proportion of such tax to which it is entitled under the provisions of this chapter." The neglect or refusal of the board of supervisors to follow the mandate of the statute and direct the county treasurer to pay over to the city the entire bank tax collected was a violation of duty imposed by law, and gave the city a complete cause of action to recover the full amount. The statute of limitations began to run as soon as it became the duty of the county treasurer to pay to the city the taxes received, to wit, on or before the 1st day of January succeeding their payment, and any action to recover the annual amount paid is barred unless commenced within six years.

Application of this rule to the case in hand precludes a recovery for the years 1902, 1903, and 1904. As to the amounts retained from the bank taxes of 1905, 1906, 1907, 1908, 1909, and 1910, we think

the plaintiff has made out a case. Judgment is ordered accordingly, with interest on the amounts of the sums retained for each year from the 1st day of January of the succeeding year.

Let findings be prepared in accordance with these views. So ordered.