BYRON J. STROUGH, as Supervisor, etc., Appellant and Respondent, *v.* THE BOARD OF SUPERVISORS OF JEFFERSON COUNTY, Appellant and Respondent.

Where a county treasurer, instead of applying taxes assessed on the property of a railroad corporation in a town to the payment or redemption of bonds of the town, issued in aid of the construction of the road of such corporation, as required by the act of 1869 (Chap. 907, Laws of 1869), as amended in 1871 (Chap. 283, Laws, of 1871), applied them in payment of county and state taxes, with and as part of, other moneys raised by the town for those purposes, *held*, that an action, as for money had and received, was maintainable on behalf of the town against the county to recover the money so misappropriated; that the liability included as well the portion of the funds applied in payment of the state tax as that applied for other county purposes ; also, that the action was properly brought by the supervisor of the town in his name as its representative.

The cause of action in such case arises when the misappropriation is made; the statute of limitations then begins to run against it, and an action brought more than six years thereafter is barred..

While every duty imposed upon a public officer is in the nature of a trust, persons injured by a violation of the duty for which they may maintain an action at law, must pursue that remedy within the period of limitation of legal actions.

Also, *held*, the fact that the supervisors of the town for the period of fourteen years were apprised from year to year, while sitting as members of the board of supervisors of the county, of the misappropriation and made no objection thereto, did not estop the town from claiming a repayment of the money.

A town cannot be estopped by the neglect of its supervisor to assert a claim against the county, the grounds of which are equally known to all members of the board of supervisors.

A county treasurer in the payment of state taxes to the state comptroller acts as agent for the county, and pays on its behalf

*Bridges* v. *Board of Supervisors* (92 N. Y. 570) distinguished, so far as it relates to the liability of the county for the portion of the fund applied in payment of state taxes.

Reported below, 50 Hun, 54.

(Argued January 16, 1890; decided January 28, 1890.)

CROSS APPEALS from judgment of the General Term of the Supreme Court in the fourth judicial department, in favor of plaintiff, entered upon an order made November 13, 1888, which directed a judgment upon a case submitted under the Code of Civil Procedure.

The facts set forth in the case, so far as material, are stated in the opinion.

*Wayland F. Ford* for plaintiff.   The provisions of chapter 907 of the Laws of 1869, as amended by chapter 283 of the Laws of 1871, are valid.   (*Bridges* v. *Board of Super.*, 92 N. Y. 570.)   By the statute a trust is created for the benefit of the town, a continuous one, and in such case the statute of limitations does not begin to run until there is a denial of the right of the beneficiary.   (*Kane* v. *Bloodgood*, 7 Johns. Ch. 90 ; Pomeroy's Eq. Juris. § 1048 ; *Swinburne* v. *Swinburne*, 28 N. Y. 568 ; *James* v. *Cowing*, 17 Hun, 269 ; *Oliver* v. *Platt*, 3 How. [U. S.] 332 ; *Saunders* v. *Dehew*, 2 Vt. 271 ; *Pye* v. *George*, 2 Salk. 686 ; 6 H. L. Cas. 214, 216 ; 3 Johns. Ch. 190 ; *Coster* v. *Murray*, 5 id. 522 ; *Murray* v. *Coster*, 20 Johns. 575 ; *Payne* v. *Gardiner*, 29 N. Y. 146 ; *Price* v. *Danforth*, 107 id. 309 ; Code, § 410 ; *Purdy* v. *Sistare*, 4 T. & C. 408 ; *Reitz* v. *Reitz*, 80 N. Y. 538 ; *Higgins* v. *Higgins*, 14 Abb. [N. C.] 13 ; *Corkins* v. *State of New York*, 99 N. Y. 491 ; *Roberts* v. *Brownell*, 61 Barb. 31 ; Wood on Lim. § 212 ; *Rockham* v. *Siddall*, 1 Mac. & Gor. 605.)   The defendant is liable for interest.   (Pom. Eq. Juris. §§ 1079, 1080 : *Dunscomb* v. *Dunscomb*, 1 Johns. Ch. 508 ; *Bridges* v. *Board of Super.*, 92 N. Y. 587.)

*Watson W. Rogers* for defendant. The plaintiff is estopped by its own acts from recovering. (*Stoddard* v. *Whiting*, 46 N. Y. 627; 3 R. S. [8th ed.] 1048, § 18; *Peck* v. *Burr*, 10 N. Y. 294; *County of Randolph* v. *Port*, 93 U. S. 502, 513; 5 Abb. [N. C.] 49.) The plaintiff, as supervisor, cannot maintain this action. (Laws of 1886, chap. 398; *People ex rel.* v. *Brown*, 55 N. Y. 180, 185, 186; *Gailor* v. *Herrick*, 42 Barb. 79; *Town of Gallatin* v. *Lovek*, 21 id. 578.) If it shall be claimed the county treasurer or the board of supervisors knew the town of Orleans had issued bonds, then it is submitted the moneys in question were misapplied through a misunderstanding of the law, and that for a mistake of law there is no remedy, at law or in equity. (*Jacobs* v. *Marange*, 47 N. Y. 57; *Doll* v. *Earle*, 59 id. 638; *Weed* v. *Weed*, 94 id. 247; *N. L. Ins. Co.* v. *Mirch*, 53 id. 151; *Nat. Bk.* v. *Bd. of Super.* 106 id. 488; *Wood* v. *Supervisors*, 50 Hun, 1.) The court below was right in holding that the claim for all the moneys paid prior to June 1, 1883, was barred by the six-years statute of limitation. (Code Civ. Pro. § 380; *Stacy* v. *Graham*, 14 N. Y. 492; *Howard* v. *France*, 43 id. 593; *Roberts* v. *Ely*, 113 id. 128; *Mills* v. *Mills*, 115 id. 80; *Allen* v. *Miller*, 17 Wend. 202; *Foot* v. *Farryton*, 41 N. Y. 164; *Morris* v. *Budlong*, 78 id. 544–558: *Argall* v. *Bryant*, 1 Sandf. 98; *Miller* v. *Ward*, 41 Hun, 600; *Carr* v. *Thompson* 87 N. Y. 160; *Price* v. *Munfred*, 107 id. 303–309; *Lawrence* v. *Stoddard*, 103 id. 672; Perry on Trusts, § 865.)

ANDREWS, J. The county treasurer of Jefferson county, from 1873 to 1887, omitted to perform the duty imposed upon him by the fourth section of chapter 907 of the Laws of 1869, as amended by chapter 283 of the Laws of 1871, to apply the taxes assessed during those years on the property of the Clayton and Theresa Railroad, within the town of Orleans in said county, and collected and paid over to him, either to the purchase of the bonds of said town, issued in aid of the construction of said railroad, or in the purchase of other bonds to be held as a sinking fund for their redemption. The aggregate taxes so col-

lected from the railroad for state and county purposes, was $4,845.31, and were paid out by the treasurer for general county purposes, including state taxes. It is one of the agreed facts, that at the times the moneys were so applied, neither the county treasurer nor any officer of the county was cognizant of the duty imposed by the act of 1871, and that there was no intentional misapplication of the taxes in question. The warrants issued by the board of supervisors, under which they were collected, were in the usual form, and required the collector to pay over certain specified sums to various town officers, and a certain sum to the county treasurer on account of the state tax levied on the town of Orleans, and, to pay to the treasurer the remainder of the moneys collected, not otherwise particularly appropriated. There was no specific direction in the warrants in respect to the disposition to be made of the taxes collected from the railroad, and they were included in the aggregate sum paid to the treasurer and there was no separate application of those moneys by him, to state or county purposes, but the same were applied with, and as a part of, the other moneys raised in the town.

In the year 1872 bonds of the town of Orleans, to the amount of $80,000, were issued in aid of the construction of the Clayton and Theresa Railroad. Litigation arose as to the validity of the proceedings to bond the town, and no taxes were raised in the town to pay the interest or principal of the bonds until the year 1879, which was after the decision of the United States Supreme Court affirming the validity of the bonds, in the case of *Orleans* v. *Platt* (99 U. S. 676), made in 1878. The attention of the board of supervisors and of the county treasurer was first called to the provisions of section 4, of the act of 1871, in the fall of 1887, when a demand was made upon the board, in behalf of the town, for repayment into the treasury of the county, of the taxes collected in said town from the railroad, and used in payment of state and county taxes. Thereafter, the plaintiff, as supervisor of the town of Orleans, and the defendant, the board of supervisors of Jeffer-

son county, made an agreed case for the submission of the controversy between the town and the county to the determination of the court, under section 1279 of the Code. The General Term sustained the claim of the town to have the moneys collected from the railroad, and used for the payment of state and county taxes, refunded by the defendant, but the court limited the recovery to moneys so misapplied within the period of six years prior to May 1, 1888, the date of the submission, and awarded judgment against the defendant for the amount of the taxes diverted during these years, with interest, and directed that the sum recovered should be paid to the county treasurer, to be applied as required by the act of 1871. Both parties have appealed, the plaintiff from the part of the judgment limiting the recovery to six years, and the defendant from the whole judgment.

The constitutionality of the act of 1871 was considered by the court *In re Clark* v. *Sheldon* (106 N. Y. 104). That was a proceeding by petition under the act of 1869, against a county treasurer to compel him to appropriate taxes collected in the town of Sodus, Wayne county, from railroads in that town, as required by the act, and it was decided that the relief should have been granted.

It is insisted, however, that the plaintiff, as supervisor, cannot maintain the action. There can now be no controversy that the legal rights of the town of Orleans were disregarded in the application of the sums collected in that town from the Clayton and Theresa Railroad. This was an injury to a property right of the town, and may, we think, be redressed, if actionable at all, at the suit of the supervisor of the town, as the representative of its interests. The bonds issued were the obligations of the town. They are a charge upon the taxable property within the town, and there is no other resource for their payment. The act of 1869, as amended in 1871, relieved towns which should issue bonds in aid of the construction of railroads therein to some extent from the burden of the obligation, by appropriating the taxes on the railroad property therein as a special fund for the payment *pro tanto* of the

bonds issued. It is true that the taxes are collected from individual and private property, and not out of the corporate property of the town, but the statute, in substance, gives the town in its corporate capacity the beneficial ownership of the fund when it directs its application to discharge a corporate obligation. The case of *Bridges* v. *Board of Supervisors of Sullivan County* (92 N. Y. 570) sustained an action brought by the plaintiff as supervisor of one of the towns of that county, to recover from the county money raised in the town by taxation on the property of the New York and Oswego Midland Railroad, and applied by the board of supervisors to county purposes, contrary to the provisions of chapter 296 of the Laws of 1874. By that act " all moneys to be collected (by taxation) upon the real or upon the real or personal property of the said corporation in any towns or municipalities, by which bonds have been issued in aid of the construction of (said railroad), are hereby appropriated to said towns or municipalities respectively." The act required the collector to pay over the railroad tax, when collected, to the railroad commissioners, who were directed to apply the same to the payment of the interest and principal of the bonds. This is a decisive authority in favor of the right of the present plaintiff to maintain this action, as one brought to vindicate and enforce a property right of the town he represents. Other authorities support the same conclusion. (*Hathaway* v. *Town of Cincinnatus*, 62 N. Y. 434, and cases cited.)

The further contention is made that, assuming the misapplication of the money by the defendant, the town of Orleans has lost its remedy by acquiescence and laches. It appears that for a period of fourteen years the town of Orleans was represented by its supervisor in the board of supervisors, who was apprised from year to year of the disposition made by the county treasurer of the railroad taxes in the town, that is, that they formed a part of the aggregate fund out of which the state and county charges were paid, and that the supervisor of Orleans made no objection until the year 1887. It is insisted that the town of Orleans having, during this period, had the

benefit of the taxes collected from the railroad, by their application to county purposes, thus diminishing its taxation *pro tanto* for those purposes, is estopped from now insisting that the county should repay the money, although the application was unauthorized. The answer is obvious. If the county is compelled to restore the money wrongfully diverted, it will simply reinstate the county and the several towns to their prior position. The county has had the benefit of the money belonging to the town of Orleans. If restoration is made, each town, including the town of Orleans, will contribute by taxation its ratable proportion of the fund required for the repayment. In other words, each town will pay back its proportion of the taxes illegally diverted, and the tax to create the fund for reimbursement will be equivalent to what should have been originally imposed to meet its obligations, but which were discharged in part by the misapplication of the money of the town of Orleans. The town of Orleans, moreover, cannot be estopped by the neglect of its supervisor to assert a claim, the grounds of which were equally known to all the members of the board.

The point that the proportion of the railroad taxes paid by the county treasurer to the comptroller for the state tax should not be charged against the county, assumes that the county treasurer, in the payment of state taxes, does not act as the agent of the county. The quota of state taxes of each county is a county charge in the sense that the scheme of taxation makes each county a debtor therefor. When the county treasurer paid the state tax, he paid in its behalf an obligation of the county. The county had the benefit of the misapplication of the money of the town of Orleans, so far as it went to pay the state tax. We perceive no ground upon which a liability for this part of the fund can be distinguished from the liability for the part applied to other county purposes. If the county is liable for one part, it is, we think, for the other also. (See *Mayor, etc., v. Davenport,* 92 N. Y. 604.) To avoid misapprehension it should be observed that the act under consideration in *Bridges v. Board of Supervisors, etc. (supra),*

only appropriated to the use of towns or municipalties respectively, whose bonds were issued for the construction of the New York and Oswego Midland Railroad, the part of the taxes raised therein known, technically, as the county taxes, while the act now in question appropriates all taxes on railroads, except those raised for school and road taxes, to the use of the town issuing bonds under the act of 1869, including therefore as well what is known as the state tax, as the county tax proper.

The misappropriation of the taxes in question being conceded, there can, we think, be no doubt that an action lies against the county in behalf of the town of Orleans, to recover back the money misappropriated, on the principle upon which the equitable action for money had and received is founded. The money was collected in the town under the warrant of the board of supervisors. It was paid by the collector into the treasury of the county. In contemplation of law it was received by him for the purposes specified in the act of 1871, viz., the purchase or final redemption of the outstanding bonds of the town of Orleans. The county applied it, in contravention of the act, towards the discharge of county obligations. It ought in justice to restore it and make good to the town what it has lost by its unauthorized acts. To compel the performance of this duty, an action for money had and received is an appropriate remedy. It was held in *Newman* v. *Supervisors of Livingston County* (45 N. Y. 676) that this form of action could be maintained against a county to recover back money collected on an illegal tax and paid into its treasury, and the fact that in this case the tax was legal, and that the wrong consisted in the improper diversion by the county of a fund belonging to the town, can make no difference. In *Bridges* v. *Supervisors of Sullivan County* (*supra*), an action for money had and received was held to be the proper remedy, under a state of facts quite similar to those in the case before us. The promise upon which the action for money had and received is founded, is implied by law from the duty resting upon one who wrong-

fully withholds from another money which he cannot conscientiously retain, to account for and restore it to the person or party equitably entitled to it.

The final questiona rises upon the appeal of the town from the part of the judgment limiting the recovery to the taxes collected and appropriated within six years prior to the submission. Section 382, of the Code of Civil Procedure, prescribes a limitation of six years after the cause of action has accrued to certain actions, and among others, to "an action upon a contract obligation, or liability, express or implied, except a judgment or sealed instrument." It is stated in the submission in this case, that the several sums collected and paid to the treasurer of Jefferson county on account of railroad taxes in the town of Orleans, were "paid out and expended in payment of the debts and liabilities of the county of Jefferson, on the first day of June of each year, after the year for which the tax was collected." A cause of action, therefore, for money had and received, arose on the first day of June of each year from 1873, against the county in favor of the town, for the sum so misappropriated on that day, and this cause of action would be barred in six years from that date. The plaintiff insists that the action is for a breach of trust and the misuse of trust funds, and that the statute does not commence to run against such a cause of action until there is a denial of the right of the beneficiary. The duty imposed on the treasurer was in a general sense a trust duty. This is true of every duty imposed on a public officer, but persons injured by a violation of the duty, for which they may maintain an action at law, must pursue their remedy within the period of limitation of legal actions. (See *Roberts* v. *Ely*, 113 N. Y. 128; *Butler* v. *Johnson*, 111 id. 204; *Matter of Neilley*, 95 id. 386.) The legal remedy here was adequate, and the cause of action was definite and distinct as to each misappropriation at its date, and we see no escape from the conclusion that the limitation is governed by section 382, and consequently that no recovery can be had back of six years. The limitation of ten years prescribed in

section 388 has no application, because another limitation is prescribed by section 382.

There seems to have been an error in computation in the judgment below. The plaintiff is entitled to judgment for all taxes misappropriated by the county within six years prior to May 1, 1888. It should include the taxes levied in 1881, but which were not applied to county purposes until June 1, 1882, and also all subsequent taxes received by the treasurer on or prior to June 1, 1887.

The judgment should be amended in this particular, and as so amended, should be affirmed.

All concur.

Judgment accordingly.