JESSIE BUCHANAN et al., as Trustees of School District No. 3 of the Town of Salina, Respondents, *v.* TOWN OF SALINA, Appellant.

E. PHILLIP CROWELL et al., as Trustees of School District No. 6 of the Town of Salina, Respondents, *v.* TOWN OF SALINA, Appellant.

FRANK KEOUGH et al., as Trustees of School District No. 11 of the Town of Dewitt, Respondents, *v.* TOWN OF DEWITT, Appellant.

EARL BATES, as Sole Trustee of School District No. 6 of the Town of Dewitt, Respondent, *v.* TOWN OF DEWITT, Appellant.

Fourth Department, November 14, 1945.

*James R. Skahen* for Town of Salina, appellant.

*A. Van W. Hancock* for Town of Dewitt, appellant.

*Daniel F. Mathews* for respondents.

LARKIN, J. Chapter 726 of the Laws of 1917 added to the Tax Law a new article, 9-A, imposing a franchise tax on manufacturing and mercantile corporations. On domestic corporations it was imposed for the privilege of exercising their corporate functions within the State, and upon foreign corporations for the privilege of doing business within this State. The basis of the tax was the net income of the corporation for the preceding fiscal or calendar year. The only section with which we are concerned in this litigation is 219-h, which, as the article was originally enacted, provided for the disposition of the tax revenues, two thirds to the State and one third, which never reached the State Treasury, to the various cities, towns and villages of the State in which there were tax-paying corporations, to be used by these subdivisions for general municipal purposes. By chapter 447 of the Laws of 1921, section 219-h was amended and a new subdivision (subd. 7) added. As a result of this amendment the supervisor of each town sharing in the tax was required to pay one third of the town's share to the various school districts of the town in which there were tax-paying corporations. Chapter 654 of the Laws of 1922 again amended this section. The result of this amendment was, thereafter, districts in towns of Onondaga County only, shared in the distribution of this tax. The section, with this provision in favor of the school districts of the towns of Onondaga County, remained in

the Tax Law from 1922 to 1944, without change, except that in 1929 it was further amended by making the water districts of the town of Greenport, Columbia County, the recipients of one third of that town's share of this franchise tax (L. 1929, ch. 381). In 1944 the Legislature repealed article 9-A of the Tax Law, with a saving clause, which continued it in operation for the purpose of the collection of taxes. However, by chapter 415 of the Laws of 1944, a new article, 9-A, was enacted, effective March 31st of that year. Section 219-h became section 218 of the new article, but it reads exactly as former section 219-h read after the amendments of 1922 and 1929. In view of the saving clause when former article 9-A was repealed, insofar as this litigation is concerned, apparently we are only concerned with the validity of chapter 654 of the Laws of 1922, which allocated to the school districts of the towns of Onondaga County only, of all school districts of the State, a share of these revenues. Although the record is rather scant enough appears therein, as supplemented by the argument of this appeal, from which the inference is permissible that but one of the nineteen towns of Onondaga County ever complied with the requirement of chapter 654 of the Laws of 1922.

In the Summer of 1944, the four school districts, plaintiffs in the instant actions, filed with the two towns, defendants, claims for the portion of the revenues allocated to them by the amendment of article 9-A made in 1922. The defendant towns ignored these claims. In the Fall of 1944, the present actions were commenced, in which a recovery was sought, in each, for that portion of the tax paid to the supervisors of the two towns, which, by the terms of section 219-h, should have been paid to the school districts. The recoveries sought were limited to the six years preceding the commencement of the actions. Liberally construed, each complaint states a cause of action for money had and received. This form of action is authorized by *Strough* v. *Board of Supervisors* (119 N. Y. 212; *City of Buffalo* v. *County of Erie* (88 Misc. 591, affd. 171 App. Div. 973, affd. 220 N. Y. 620); *Village of Elmira Heights* v. *Town of Horseheads* (140 Misc. 147, affd. 234 App. Div. 270, affd. 260 N. Y. 507).

The answers interposed raised the following defenses, which were the only ones urged upon the trial or upon this appeal:

1. The unconstitutionality of the statute: (a) Because this allocation of a portion of these revenues to the school districts of the towns of Onondaga County alone, of all the State, was arbitrary and discriminatory and thus violative of the due process and equal protection of the laws clauses of the State

and Federal Constitutions; (b) that insofar as the statute attempted to allocate a portion of the revenues, payable elsewhere, to the towns of the State for general town purposes, to the school districts of Onondaga County, chapter 654 of the Laws of 1922 was a local law contravening section 15 of article III of the State Constitution; (c) that the allocation of this tax to the school districts was an appropriation of State moneys, and since it was passed as a three-fifths bill it did not comply with section 20 of article III of the State Constitution; (d) that, since concededly chapter 654 of the Laws of 1922 was not passed upon either a request from the board of supervisors, or a certificate of necessity by the Governor, the statute in question violated section 1 of article IX of the State Constitution.

2. That the plaintiffs, as trustees of the various school districts, lacked legal capacity to enforce the claims.

3. That the plaintiffs did not comply with either subdivision 3 of section 65 or section 67 of the Town Law, regulating the presentation of claims against towns based on contract or tort.

4. That since the school districts had slumbered on their rights for twenty-two years they were estopped now to assert these claims through their laches, and by their acquiescence in the use by the towns, for general town purposes, of the districts' portions of the tax money.

The most troublesome of the constitutional questions is the first, that the tax is discriminatory and thus offensive to the due process and equal protection of the laws clauses of the State Constitution. We doubt that any Federal question is involved (*General American Tank Car Corp.* v. *Day,* 270 U. S. 367). Concededly, on its face, this statute is discriminatory. Nevertheless it must be borne in mind that next to the police power of the State the least limitable of all the powers of government is that of taxation. That power is lodged in the State Legislature, which is practically unfettered by any constitutional limitation. Therein our Constitution differs from those of other States, which contain a constitutional provision requiring equality and uniformity of taxation. Yet, despite the absence of any express constitutional provision, it is true that the underlying principle of all taxation is that it must be uniform and equal. However, that requirement is confined to the levy and assessment of the tax, and ordinarily does not apply to the distribution or application of the revenues derived therefrom (61 C. J., Taxation, § 56; *State ex rel. Van Dyke* v. *Cary,* 181 Wis. 564; *Bayville Village Corporation* v. *Boothbay Harbor,* 110 Me. 46). There

are decisions of other States to the contrary. Perhaps as strong for the position of the defendants are *Com.* v. *Alden Coal Co.* (251 Pa. 134) and *People* v. *Fox* (247 Ill. 402). The force of the Pennsylvania decision is somewhat weakened by a subsequent decision of the same court, *Heisler* v. *Thomas Colliery Co.* (274 Pa. 448, affd. 260 U. S. 245). However, in the *Heisler* case, the statute there construed evidently did not contain any provision allocating to the boroughs of the counties from which anthracite coal was mined any portion of the tax, as did the statute construed in the first decision of the Pennsylvania Supreme Court. Therefore, the *Heisler* case can only be deemed to overrule the *Alden Coal Company* case insofar as the latter decision held that the classification of anthracite coal for the purpose of taxation was unconstitutional. When the *Illinois* case is read it is extremely doubtful whether the same conclusion would have been reached by the courts of this State. There, a statute distributing all of the road tax to cities of more than 20,000 population was held discriminatory as to municipalities of lesser population, and violative of a constitutional provision as to local laws. Many classifications of cities based purely on population, although clearly but one city could have been intended, have been held by the courts of this State constitutional. In considering this particular question we must bear in mind that the Legislature was allocating the tax revenues, not solely for a local purpose, but one in which the entire State was interested, namely, education. It must be presumed that, in enacting this statute, the Legislature found conditions existing in Onondaga County which warranted the allocation of these moneys to the school districts of the towns of that county alone, of all the school districts in the State (*Stapleton* v. *Pinckney,* 293 N. Y. 330, 336). Having regard then for the foregoing presumption, the purpose for which this allocation was made, and the almost unlimited power of the Legislature of this State in matters of taxation, even though it must be assumed that an equitable apportionment of taxes is contemplated in every system of government, still in this State the apportionment of tax revenues is a matter resting in the discretion of the Legislature (*Gordon* v. *Cornes, et al.,* 47 N. Y. 608, 611), and with the exercise of that discretion the courts cannot interfere, even though they may disagree as to the wisdom of the particular apportionment. Moreover, since the money was allocated for a matter of State-wide interest, namely, education, from the very nature of the situation it is inevitable that at times a larger amount of State funds

may be spent in one place than in others. We have, therefore, reached the conclusion that this statute is not vulnerable because of the fact that the school districts of the towns of Onondaga County are preferred in the apportionment of the tax over those elsewhere in the State. The situation must be remedied, if that be desirable, not by the courts, but by the Legislature.

Nor was chapter 654 of the Laws of 1922, clearly enacted as a general statute, a local one, contravening section 15 of article III of the Constitution because of this allocation of State funds (*People ex rel. Clauson* v. *Newburgh, etc., Plank Road Co.,* 86 N. Y. 1; *City of New York* v. *Fifth Avenue Coach Co.,* 237 App. Div. 383, 401, 414–415, affd. 262 N. Y. 481; *Gubner* v. *McClellan,* 130 App. Div. 716). Moreover if it be conceded that it was within the competency of the Legislature to allocate the tax moneys to these school districts, then the title of the act fully disclosed its purpose, because such allocation was a mere incident to the power of the Legislature to dispose of the revenues raised.

We do not find any basis for defendants' position that because this statute was passed as a three-fifths bill there was a violation of section 20 of article III of the State Constitution. The revenues allocated to these school districts never reached the State Treasury. They were earmarked by the act itself for these school districts. The tax is, in its nature, an excise tax. It has never been thought requisite for the allocation of moneys raised by such a tax that the statute be passed by a two-thirds vote (*People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367; *People ex rel. Eisman* v. *Ronner,* 185 N. Y. 285).

Neither is there force in the claim that this statute violated section 1 of article IX of the State Constitution because there was no request for its passage by the Board of Supervisors of Onondaga County, nor was there a certificate of necessity by the Governor. This particular section did not come into the Constitution until 1938. Moreover, when article IX is read it seems quite apparent that it does not apply to a statute of this character. The County of Onondaga, as a county, is not concerned, but only the towns and school districts in which there are corporations paying this particular tax.

The plea of the defendants that the plaintiffs, trustees of the various school districts, have not legal capacity to enforce these claims is a little difficult to understand from the answers and the record. Ordinarily an objection that the plaintiff has not legal capacity to sue is waived unless taken by motion

(Civ. Prac. Act, § 278). Possibly this action should have been brought, in the first instance, by the various school districts, because, since the enactment of chapter 563 of the Laws of 1890, school districts have been and now are municipal corporations (General Corporation Law, § 3, subd. 2). Again, possibly if the governing body of any of these plaintiffs is a board of education, which has for many years been made by the statute a body corporate, and now is (Education Law, § 300) the action should have been brought by the board. As to the plaintiffs which are ordinary school districts governed by article 10 of the Education Law, since by section 270 of that Law the sole trustee or trustees of such a school district constitute a board for that district, and is created a body corporate, which has been true since the enactment of chapter 556 of the Laws of 1894 (tit. VII, § 42, thereof), the action would seem to have been properly brought. Since, by section 282 of the Education Law, it is made the duty of the trustees to notify the treasurer of the county and the Commissioner of Education of the failure of the supervisor to pay over any moneys apportioned to the school district, and since the Commissioner of Education has power to enforce any special or general law relating to the schools of the State (Education Law, § 96), it might be urged that the commissioner was the proper person to bring these actions. Or again, on the reasoning of *Board of Education* v. *Board of Education* (76 App. Div. 355, affd. 179 N. Y. 556) and *Union Free School District* v. *Village of Glen Park* (109 App. Div. 414), possibly the argument could be advanced that the actions are not maintainable because they do not involve school property. If the objection was based on this last premise it is not tenable. Provided this portion of the tax money was properly allocated to the school districts of Onondaga County it became their property as soon as it reached the hands of the town supervisors. Either the district itself, the board of education, or the trustees, as a corporate body, would seem to be entitled to enforce the right of the district to these funds. By the provisions of the Education Law the governing body of the district has the control and is entitled to the possession of the property of the district. These funds were clearly property of the district. Therefore, whatever view may be taken of this objection, it does not go to the merits of this controversy, and therefore, not having been taken by motion, must be deemed to have been waived under section 278 of the Civil Practice Act. In considering this particular defense we give no heed at this time to sections 858 and 859

of the Education Law, as these sections do not preclude the bringing of actions by the trustees.

The defense, in whole or in part, based on the failure of the plaintiffs to comply with either subdivision 3 of section 65 or section 67 of the Town Law, likewise, cannot be sustained. The causes of action asserted, as already noted, are for money had and received. Such a cause of action is based on equitable principles. As applied to this statute, these causes of action proceed upon the theory that money which should have been paid into the treasury of the school districts, there to be used for school purposes, has been paid into the town treasury and used for general town purposes. Since the obligation was on the town supervisors, on receipt of these moneys, to pay them over to the school districts as directed by the statute, they may also be said to be based upon the noncompliance by the town supervisors with this statutory provision. Causes of action for money had and received are quasi-contractual in their nature. They are not founded upon any contract, either express or implied (*Loughman* v. *Town of Pelham*, 126 F. 2d 714). Consequently subdivision 3 of section 65 of the Town Law has no application. Again, bearing in mind the very nature of the causes herein pleaded, they bear a greater resemblance to actions in contract than in tort. In 1 Williston on Contracts (Rev. ed., § 3, p. 9) speaking of the power of the law to create quasi-contractual obligations, the author states: " The only apparent restriction upon the power of the law to create such obligations [quasi-contractual] is that they must be of such a sort as would have been appropriately enforced under common-law procedure by a contractual action. * * * As the law may impose any obligations that justice requires, the only limit in the last analysis to the category of quasi contracts is that the obligation in question more closely resembles those created by contract than those created by tort."

Section 67 of the Town Law is not applicable, when the complaints herein are read in the light of the foregoing statement. The heading of section 67 is " Presentation of claims for injury to person or property." When the language of the entire section is considered it is clear that the claims for which provision is therein made are those which arise from tortious acts. The claims herein asserted are more contractual in their nature than tortious.

The remaining defense, namely, estoppel because of laches and acquiescence on the part of the school districts, is quite appealing. For twenty-two years, although the statute allo-

cated to these districts a portion of the tax money in question, the districts never asserted their rights. Practically all of the taxpayers of the school districts pay town taxes. They have been benefited, through the use of this tax money for general town purposes, in a lessened town tax, even though it may have necessitated some additional school tax. Under all the circumstances it would seem that in an action of this character the school districts should be held to have acquiesced in this disposition of the moneys allocated to them by section 219-h of the Tax Law. However, although the circumstances were probably not so pronounced as they appear herein in favor of this defense of the towns, of acquiescence, still apparently the same defense was considered and ruled untenable in *Strough* v. *Board of Supervisors* (119 N. Y. 212); *City of Buffalo* v. *County of Erie* (88 Misc. 591, affd. 171 App. Div. 973, affd. 220 N. Y. 620) and *Village of Elmira Heights* v. *Town of Horseheads* (140 Misc. 147, affd. 234 App. Div. 270, affd. 260 N. Y. 507). No matter how much one would be inclined to sustain this defense it must be held, on the authority of the foregoing decisions, to be unavailing.

From what has already been stated it is evident that despite the defenses presented, either upon the trial or this appeal, the judgments should be affirmed. Such a course would follow except that this court feels that it should take judicial notice of the provisions found in section 491 of the Education Law, as amended and renumbered by chapter 171 of the Laws of 1930, in effect July 1st of that year. This section continued in effect throughout the years covered by this litigation. The particular provision to which we call attention is found in the second paragraph of subdivision 3 of section 491 of the Education Law as it read until 1945. In substance, it was therein provided that the section (491) should determine the amount and manner of the apportionment of public moneys to the school districts, and that the moneys apportioned under the provisions of the section (491) should be in lieu of all other apportionments of State funds to the school districts, except nonresident, academic tuition, training class, transportation and building quotas, and the compensation and expenses of teachers attending institutes or conferences, as provided by the Education Law. Although the tax revenues allocated were not State moneys within the meaning of section 20 of article III of the Constitution, still we believe they were State funds as those words were used in section 491 of the Education Law prior to 1945. The defense of this statute was not presented by the answers, nor to the trial

court, nor on this appeal. Nevertheless, we believe that a litigation as important as this may be, not only to the municipalities herein involved, but also to other municipalities similarly situated in Onondaga County, should not be determined until the defendants have an opportunity to present in the trial court the facts which may constitute a defense to these claims. Although we are authorized to take judicial notice of the statute, we do not feel that we can take judicial notice of the allotment of school moneys to these districts, nor under what sections those allotments were made. The record herein is barren of any such proof. Moreover the exact character of the school districts is not disclosed, that is, whether they are union free, central, consolidated or ordinary school districts. All these factors will have a bearing on the ultimate determination of this litigation. We do not intend hereby to pass upon the necessity of an amendment of the answers in order to permit proof of the facts to bring the provisions of section 491 of the Education Law, as it read prior to 1945, into play. Although we do not feel that we can take judicial notice of the character of these districts, nor the sections under which they may have received an allotment of school moneys, we do know, as a matter of common knowledge, that for the past twenty-five years the apportionment of school moneys to the various school districts has steadily increased, and that of the total expenditures made by the various school districts of the State for education the State of New York pays a large share. Nor are we called upon to determine now that in the event these school districts have received, during the period covered by this litigation, any allotment of school moneys under section 491 of the Education Law, they are precluded from recovering in these actions any portion of the tax moneys allocated to them by section 219-h of the Tax Law. In fairness to the litigants, especially in view of the importance to the municipalities involved, and the possibility that there are others similarly situated, such a determination should await the outcome of a new trial in which the parties have had full opportunity to develop the facts which may support this particular defense and have had an opportunity to present their arguments as to the applicability of the statute.

Therefore, in the interests of justice, these judgments should be reversed and new trials directed.

All concur, except DOWLING, J., who dissents and votes for reversal and for dismissal of the complaint in the following memorandum: The Commissioner of Education alone has the

power, under sections 96 and 282 of the Education Law, to enforce apportionment of the revenues in question to the appropriate school districts or to pursue any remedy available for the recovery of the revenues in case of their unlawful diversion by the town supervisors or by the towns themselves. It was not the design of the Education Law to place upon the taxpayers of school districts the expense of litigation to recover revenues which may be diverted by town supervisors or by the towns.

Present — TAYLOR, P. J., DOWLING, McCURN, LARKIN and LOVE, JJ.

In each action: Judgment reversed on the law and a new trial granted in the interests of justice, with costs to the appellant to abide the event. [See *post,* pp. 800, 801.]