JESSIE BUCHANAN et al., as Trustees of School District No. 3 of the Town of Salina, Plaintiffs, *v.* TOWN OF SALINA, Defendant.

E. PHILLIP CROWELL et al., as Trustees of School District No. 6 of the Town of Salina, Plaintiffs, *v.* TOWN OF SALINA, Defendant.

FRANK KEOUGH et al., as Trustees of School District No. 11 of the Town of Dewitt, Plaintiffs, *v.* TOWN OF DEWITT, Defendant.

EARL BATES, as Sole Trustee of School District No. 6 of the Town of Dewitt, Plaintiff, *v.* TOWN OF DEWITT, Defendant.

Supreme Court, Trial Term, Onondaga County, March 1, 1946.

*Daniel F. Mathews* for plaintiffs.

*James R. Skahen* for Town of Salina, defendant.

*A. Van W. Hancock* for Town of Dewitt, defendant.

SEARL, J. An exhaustive opinion, in which a majority of the court joined (270 App. Div. 207), has already reviewed the law applicable hereto. Judgments rendered for plaintiffs on the former trial have been reversed and new trials ordered. The appellate court has disposed of the various defenses interposed in the original answers. At the instant trial the court permitted amendments to the answers so as to properly bring before the court the question as to whether section 491 of the Education Law applies.

The trial court has allowed respective counsel a wide latitude of expression as to their views touching the only question now before the court, namely: Do the words " in lieu of all other apportionments of state funds to such districts " (Education Law, § 491, subd. 3, as amd. and renum. by L. 1930, ch. 171) preclude plaintiffs from recovery of amounts claimed due under section 219-h of the Tax Law?

Application was made to this Appellate Division for reargument of the case. In denying the application the court handed down this brief memorandum: " All questions as to the applicability of 491 of the Education Law as a defense must be determined upon the new trial." (270 App. Div. 800.) Thereby, the court clearly indicated that the original opinion was in no way to be interpreted as a finding that section 491 of the Education Law was or was not applicable.

In seeking an answer as to the intention of the Legislature when section 491 was amended in 1930, New York Legislative Document No. 92 of the year 1926 and New York Legislative Document No. 74 of the year 1927 were received in evidence. Both relate to the financing of education. Colonel Michael Friedsam, of New York City, appears to have been the chairman of a commission appointed by the Governor to study and report on " School Finance and Administration ". The conclusion is obvious that the action of this commission resulted in the passage of chapter 171 of the Laws of 1930, entitled " AN ACT to amend the education law, in relation to the apportionment of school moneys ". The same amends section 490 through section 493 of the Education Law. It contains what has been referred

to as the " Friedsam Formula," a more or less technical, though apparently practical, manner of distribution of public school moneys. The formula takes its name from the chairman of the commission.

We now approach the nub of the question at issue, does the term " apportionment ", as referred to in the cited sections of the Education Law, contemplate the inclusion of moneys specified to be paid to the supervisors of certain towns, and then divided and paid to school districts, as directed by the Tax Law (§ 219-h, subd. 7).

Subdivision 7 of section 219-h of the Tax Law (as amd. by L. 1922, ch. 654) provides: " Upon the distribution of such revenues * * * the entire allotment of any town in Onondaga county paid to the supervisor thereof shall be further distributed by him as follows: One-third thereof shall be apportioned among the several school districts in such town * * *. The balance thereof shall be retained by him and credited to general town purposes."

Section 219-h is part and parcel of a general law. Although subdivision 7 thereof relates to Onondaga County, and is local so far as such reference is concerned, still it can in no sense be termed a local law. As expressed by Chief Judge Andrews in *People ex rel. Einsfeld* v. *Murray* (149 N. Y. 367, 380): " It is a general state excise law, with such special provisions and adaptations to localities as to the legislature seemed proper."

The State terms the tax funds " revenues ". As the Tax Law (§ 219-g) provides that the money collected is deposited in a special account entitled: " * * * the state comptroller on account of the franchise tax * * * ", it is argued that these funds never reach the State treasury. By following the next section of the law (§ 219-h) it is observed that " The state comptroller shall on or before the twenty-fifth day of each month pay into the state treasury to the credit of the general fund * * * two-thirds of all taxes deposited under this article during the preceding calendar month * * *. The balance of all taxes deposited under this article shall * * * be distributed and paid by him to the treasurers of the several counties of the state and disposed of by such treasurers in accordance with the rules hereinafter set forth."

Thus these " revenues " are divided when they reach the hands of the State Comptroller. The moneys can properly be said to be earmarked as soon as collected, two thirds eventually reaching the general fund of the State and the balance, one

third, reaching such localities as the law has designated, a portion of the one third in turn being allocated to the school districts. This arrangement is termed a shared tax.

As the law designates the portion to which each is entitled from the moment of collection, it seems proper to conclude that at the instant of collection the designated locality or school district has a *vested interest* in the fund so collected. Such a finding is warranted by the decision in *People ex rel. Eisman* v. *Ronner* (185 N. Y. 285, 289–290), where the court cites with approval from *People ex rel. Einsfeld* v. *Murray* (149 N. Y. 367, *supra*) to the effect " It was pointed out, in the opinion of this court, that this appropriation of the excise taxes ' operated on the fund at the very moment of its collection. The two-thirds so appropriated never reaches the treasury of the State and never bears the impress of State money.' "

Charles A. Brind, Jr., now counsel to the Education Department, who has been associated with the department continuously since 1922, was called as a witness for the plaintiffs. Although the court was forced to exclude considerable testimony sought to be elicited leading up to the amendment of the Education Law in 1930, containing the provisions presently at issue, still the court was able to glean sufficient from such portions of his testimony as could properly be received, together with the other evidence adduced, to indicate that when the Legislature enacted such amendment to the Education Law it did not contemplate thereby to abrogate such provisions of the Tax Law as permitted the school districts of Onondaga County from participating in tax funds. Such money as the districts of Onondaga County received by virtue of the Education Law through annual appropriations of the Legislature could only be applied " to the payment of teachers' salaries and the cost of school maintenance " (Education Law, § 490), while tax moneys might be used for construction of school buildings or general expenses of an educational program.

However, by far the most cogent argument that can be advanced in favor of the conclusion that is reached is the fact that the Legislature of 1944, by the passage of chapter 415 of the Laws of 1944, in amending the Tax Law, repealed former article 9-A and at the same time added a new article 9-A, which gave to the towns and school districts of the several towns of Onondaga County the same share in franchise tax moneys as the act of 1922 afforded (L. 1922, ch. 654). It is fair to assume the Legislature had in contemplation any applicable provisions of the Education Law, especially when apportionments by virtue

of the Education Law are reaching such figures as counsel for the department indicates for 1946, namely, $100,000,000.

Section 95 of the General Construction Law (the same language being followed in McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 373) provides: " The provisions of a law repealing a prior law, which are substantial re-enactments of provisions of the prior law, shall be construed as a continuation of such provisions of such prior law, modified or amended according to the language employed, and not as new enactments."

Four actions are here being tried. By stipulation the record on the former trials is made a part of the new record at this time. In the action of Earl Bates, as Sole Trustee of School District No. 6 of the Town of Dewitt, as plaintiff, it has been stipulated that no State aid has been paid pursuant to the Education Law (§ 491) since January 1, 1927. It is also stipulated that with the exception of the case of School District No. 11 of Dewitt, all of the other three districts are Common School Districts.

Plaintiff has offered proof in support of the contention that District No. 11 of the Town of Dewitt is a Consolidated School District. The concluding paragraph of section 491 of the Education Law provided: " Notwithstanding the provisions of this act, consolidated districts, central school districts and central high school districts shall continue to receive their apportionments of school moneys under the statutes applicable thereto as they existed on June first, nineteen hundred thirty."

The proof offered is the original clerk's record for Union Free School District No. 11, Towns of Dewitt, Pompey and La Fayette, from April 29, 1893, to August 7, 1894. The record contains an order to the supervisor, signed " N. F. Benedict ", " School Com'r Third Dist Onondaga County NY " and " S. O. Howard Clerk " indicating that District No. 4 of La Fayette and Districts Nos. 14 and 11 of the Town of Dewitt were " consolidated, as provided by Section 8, Title 6, Laws of 1864, as amended in 1893."

Defendants urge that no order of consolidation of the districts above referred to was ever filed " in the town clerk's office of the town in which such districts are located " as required by section 133 of the Education Law. However, an examination of the law as it existed in 1894, when the order was issued, discloses no requirement for filing. The original act (L. 1864, ch. 555) contained no such requirement. The order in question is dated May 28, 1894. The amendment (L. 1894, ch. 556) by

its terms (art. 16, § 51) did not take effect until June 30, 1894, a month after the date of the aforesaid order. The original statute of 1864 (L. 1864, ch. 555, tit. VI, § 8) did, however, contain this provision: " § 8. When two or more districts shall be consolidated into one, the new district shall succeed to all the rights of property possessed by the annulled districts."

It will be noted that the last paragraph of section 491 of the Education Law (1930) exempted consolidated districts so as to permit such districts " to receive their apportionments of school moneys under the statutes applicable thereto as they existed on June first, nineteen hundred thirty." In other words, the much discussed phrase " in lieu of " has no application to consolidated districts. When, however, chapter 153 of the Laws of 1942 took effect on July first of that year " consolidated districts " were eliminated from the text. After that date the exception applied only to " central school districts and central high school districts ". This change, however, has no significance here, in view of the instant decision, namely, that the restrictive provision contained in the Education Law (§ 491) does not apply.

Motions made by defendants for a nonsuit and dismissal of the several complaints both at the end of plaintiffs' cases and at the close of the evidence, as well as defendants' motions for directed verdicts, upon which decisions were reserved, are denied, proper exceptions being noted. Exhibits A, B, D, G, H, and I are received; Exhibits C, E and F are not received in evidence. The court directs verdicts as follows:

(1) In the action of *Buchanan* v. *Town of Salina,* for plaintiff, in the sum of $20,064.23, together with interest to March 1, 1945, as already established at $1,700.54, together with interest on $20,064.23, at 4% from March 14, 1945, date of entry of former judgment, to March 1, 1946, the date of this decision, at $769.12, making a total of $22,533.89.

(2) In the action of *Crowell* v. *Town of Salina,* for plaintiff, in the sum of $12,274.63, together with interest to March 1, 1945, as already established at $1,146.45, together with interest on $12,274.63, from March 14, 1945, date of entry of former judgment, at 4%, to March 1, 1946, date of this decision, at $470.53, making a total of $13,891.61.

(3) In the action of *Keough* v. *Town of Dewitt,* for plaintiff, in the sum of $17,752.47, together with interest to March 1, 1945, as already established at $2,425.92, together with interest on $17,752.47, from March 14, 1945, date of entry of former judgment, at 4% to March 1, 1946, date of this decision, at $680.51, making a total of $20,858.90.

(4) In the action of *Bates* v. *Town of Dewitt,* for plaintiff, in the sum of $10,395.09, together with interest to March 1, 1945, as already established at $1,409.74, together with interest on $10,395.09, from March 14, 1945, date of entry of former judgment, at 4% to March 1, 1946, date of this decision, at $398.90, making a total of $12,203.73.

Plaintiffs in all the actions are awarded costs to date, to be taxed by the clerk.

Findings and judgments accordingly.