In the Matter of the VILLAGE OF GOWANDA, Respondent, v. COUNTY OF ERIE et al., Appellants.

Fourth Department, January 20, 1966.

*Norman A. Stiller, County Attorney,* for appellants.

*Roger E. Pyle* and *Andrew J. Musacchio* for respondent.

WILLIAMS, P. J. We have for review a judgment in favor of petitioner, Village of Gowanda (which we shall call Village), against the County of Erie and others (to which we shall collectively refer as County), directing that the County pay to the Village certain portions of the Erie County Sales and Compensating Use Tax accruing during the first quarter year subsequent to July 1, 1964 and that thereafter similar shares or portions be paid to the Village quarterly as they accrue.

The problem arises because the Village is located partly within the County of Erie and partly within the County of Cattaraugus, the actual population division being approximately two thirds in Cattaraugus County and one third in Erie County. If the Village were wholly within the County there would be no problem.

The answer depends on the interpretation of the State enabling act as it existed on July 1, 1964 (L. 1947, ch. 278, § 1, as amd.) and the Erie County Sales and Use Tax, which was created by resolution of the Board of Supervisors of the County passed on June 2, 1964 pursuant to the provisions of said enabling act (Erie County Bd. of Supervisors, Proceedings of 1964, Meeting No. 21, pp. 425–452).

The Village claims that it is entitled to receive these funds under and by virtue of certain provisions in paragraph (b) of section 11 of chapter 278 of the Laws of 1947 (the enabling act as it existed on July 1, 1964). These provisions also were adapted for use in the Erie County Board of Supervisors' resolution. The enabling act read as follows: " If any village, by local law, ordinance or.resolution shall so provide, the amounts which would be so applied to reduce the county tax and general town tax levied upon real property in such village shall be paid

directly to such village in lieu of such tax reductions. In such case, the balance of the amount allocated to the town in which such village is wholly or partially situated shall be applied to reduce county taxes and general town taxes in the area of the town outside such village or villages." (L. 1947, ch. 278, as amd. by L. 1963, ch. 972, § 1.)

The Village resolution purporting to elect to receive the moneys involved was passed June 23, 1964. A literal application of the quoted language, without consideration of any other portion of the act or of the reasons, objects, and purposes which induced its passage, would indicate that the Village has a right to receive such funds. However, in determining legislative intent, it is not the specific language of any single portion of an act that controls. In *People* v. *Martell* (16 N Y 2d 245, 247) the Court of Appeals wrote as follows: "Several rules of statutory construction come into play and the application of any or all of them sustains defendant's position. The first is the rule that to get the sense of a statute one must read the whole of it (*People* v. *Ryan*, 274 N. Y. 149; *People* v. *Dethloff*, 283 N. Y. 309)."

In *Essenfeld Bros.* v. *Hostetter* (14 N Y 2d 47, 52) in considering certain specific language of the Alcoholic Beverage Control Law, the court said: "This is sweeping language but, as this court wrote some years ago in construing the latter subdivision, 'In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. * * * Literal meanings of words are not to be adhered to or suffered to "defeat the general purpose and manifest policy intended to be promoted"'. (*People* v. *Ryan*, 274 N. Y. 149, 152.) 'There is no more likely way to misapprehend the meaning of language — be it in a constitution, a statute, a will or a contract'. Judge LEARNED HAND has reminded us, 'than to read the words literally, forgetting the object which the document as a whole is meant to secure.' (*Central Hanover Bank & Trust Co.* v. *Commissioner of Int. Revenue*, 159 F. 2d 167, 169; see, also, *Spencer* v. *Childs*, 1 N Y 2d 103, 106–107; *Cabell* v. *Markham*, 148 F. 2d 737, 739.)"

There are numerous other authorities which apply this general rule of construction. (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 97, and cases cited.)

From this viewpoint, we analyze the statutes and the resolutions involved. The enabling act was adopted to permit cities and counties to tax sales and use within their respective territories, and to apply the proceeds of those sales to the benefit of the territories so taxed. It permitted the County of Erie to adopt a sales and use tax for the benefit of residents and tax-

payers within the county. Section 4 of chapter 278 of the Laws of 1947 (as in effect on July 1, 1964) provided that: " Any tax imposed under this act shall have application only within the territorial limits of the county or city imposing such tax, as the case may be ". This language indicates that the tax shall confer benefits only within the territorial county limits. This is particularly so in the absence of express language to the contrary and we find no such contrary language either in the enabling act or in the County resolution.

Section 11 of chapter 278 of the Laws of 1947 provided generally for the distribution of funds collected. It carefully allocated the benefit of tax revenues to the various subdivisions within the county according to relative population figures, which is a rational and practical means of determining the relative proportion of the burden borne by each of these political subdivisions. This, we believe, discloses an over-all intent to dispense benefit only to the extent that the beneficiaries have contributed.

The method by which the portions of the tax collections allocated for educational purposes must be distributed and paid to school districts which are partly within and partly without the county is particularly significant. It is provided that the county " shall make a distribution to each such school district in accordance with the total average daily attendance of the pupils in such school district who reside in such county and in any such case, the amount to be raised by school taxes by the district from the portion of such district within such county shall be reduced by the amount so distributed." (L. 1947, ch. 278, § 11, as amd. by L. 1952, ch. 811, § 2, as in effect on July 1, 1964.) In other words, the general philosophy that the tax is for the benefit of the taxed territory only is preserved, because when the district extends within and without the County the amount so allocated within the County must be applied to the reduction of school taxes " within such county ", only.

Furthermore, it is provided in the County resolution, as it existed on the date in question, that receipts from sales of items delivered or to be delivered outside of the County should not be subject to the tax. Authority for this exemption is found in the enabling act (L. 1947, ch. 278, § 1). It is permissive and not mandatory, so that Erie County allowed an exemption that it was not required to grant. We take this as further indication of an intent on the part of the County to apply the tax and to confer its benefits on a County territorial basis.

If the Village is entitled to these funds then section 12 of chapter 278 of the Laws of 1947, as amended by section 3 of chapter 589 of the Laws of 1950, applies. That section provides

in part as follows: "Net collections received by or distributed to a county, city or village from taxes imposed pursuant to this act shall be paid into the treasury of the county, city or village and shall be credited to and deposited in the general fund thereof and, unless restricted by local law, ordinance or resolution to a specified purpose or purposes, shall be available *for any county, city or village purpose of such county, city or village.*" (Italics supplied.)

It follows, therefore, that if the Village is entitled to this money, it may be used for any legitimate Village purposes unless restricted as provided in the above section. The resolution requesting such funds has laid down no restrictions whatever. The pertinent portion of that resolution is: "RESOLVED, That its share of the amounts of money collected from the Sales and Compensating Use Tax beginning July 1, 1964 be paid directly to the Village of Gowanda, N. Y. in lieu of applying them to reduce County and General Town taxes levied upon real property." This being so, these tax moneys could be used for the benefit of the Village as a whole and if that should be done, the Village residents in the County of Cattaraugus would benefit to the extent of two thirds of the amount.

The Village argues that, under paragraph Tenth of its petition, verified by Mayor Hogle, the Erie County residents of the Village would be completely protected. That paragraph reads as follows: "The petitioner is ready and willing to apply its share of the SALES AND COMPENSATING USE TAX to reduce the Village Taxes paid by its residents who are residents of the COUNTY OF ERIE." Although we regard this allegation of little binding effect, it is significant in that it does not allege that the share will be used *only* to reduce the Village taxes paid by residents of the County of Erie. Any general use of the funds might result in some such reduction, but it would result in a similar reduction to each taxpayer who resides or has property within the County of Cattaraugus. Furthermore, under the resolution passed on June 23, 1964, the Mayor had no authority to depart from the specific language of the resolution itself or to impose restrictions upon the use of the money not contained in the resolution. The Village concedes in its brief that its Board of Trustees has not passed upon nor considered any resolution or action concerning the application and use of its share of the sales tax. Therefore there was no official limitation on its use. This is at variance with the contention of the petitioner as to the manner in which it intends to utilize these moneys. Furthermore it should be pointed out that even if a restriction had been contained in said resolution, it would be subject to alteration or

repeal at any time if the board should so resolve. This, we believe, destroys any value of paragraph Tenth to the villagers who reside in the County of Erie.

A further review of the factual situation is of interest. It was stipulated that an affidavit of Norman A. Stiller (County Attorney) read upon the motion "be considered as an answer to the petition and that all the facts set forth in the petition and in said affidavit were stipulated." Some of the facts that were so stipulated are these: When the County of Erie received a copy of the Village resolution electing to receive its share, Stiller communicated by telephone with Hogle, Mayor of the Village and the same person who verified the petition, with the Village Attorney and with a member of the Board of Trustees; Stiller called their attention to the fact that the Village of Gowanda was only partially in Erie County and that if the Village were to receive its share directly in lieu of a tax reduction to its taxpayers in Erie County, the portion of the Village in Cattaraugus County would benefit to the extent of two thirds thereof.

The Village administration was "weighed" in favor of Cattaraugus County. The Mayor, the Village Attorney, and two Trustees resided in and were taxpayers of Cattaraugus County. Two other Trustees resided in and were taxpayers of Erie County. The officials with whom Stiller communicated said that they had discussed the matter and felt that the people in Cattaraugus County were paying the sales tax in Erie County by shopping there and that they were just as entitled to consideration as the villagers who resided in Erie County. [This is not necessarily so, because of the special exemption provided for items delivered outside the county, which we have mentioned.]

They also mentioned, as a concession, that they might provide a Village facility built on the Erie County side. At no time did these officials indicate that they were ready or willing to apply the proceeds *solely* to reduce Village taxes of Erie County taxpayers. The tenor of their conversation was just the opposite, namely, that they fully expected the taxpayers of Cattaraugus County to share in the benefits accruing under the Erie County sales tax.

The Town of Collins, in which the Erie County portion of the Village is located, had filed an election to take its share for the purpose of reducing town taxes, and, since the allocation was based on the theory that the Village would not receive any share, the entire general town tax of the Town of Collins was eliminated.

24

All this, as noted, was stipulated to be true. This appears entirely contrary to the position of the Village as argued in its brief, that, under paragraph Tenth of the petition, the moneys will be used for the benefit of residents of the County of Erie. The resolution which we have quoted, and is now relied on by the Village, is in accord with the announced plans of the Village officials with whom Stiller talked.

If, however, it is really the intention of the Village to apply these moneys in reduction or elimination of Village taxes levied upon real property within the County of Erie, then it seems that the Village has no justiciable issue here. The money has already been applied to the reduction of taxes of the Town of Collins. Payment of the money to the Village would be an empty gesture. It would simply mean that the Village would receive the funds and then credit upon Village taxes the amount that has already been credited upon the Town taxes of the Erie County villagers. In other words, it would appear to set up a mere bookkeeping transaction probably calculated simply to add somewhat to the prestige of the officers of the Village.

In contemplating the possibility of the application of the funds by the Village for the benefit of the Erie County villagers only article 5 of the Village Law must be considered. There is a very serious question, in view of the basic requirements of uniformity and equality of taxation (*Buchanan* v. *Town of Salina,* 270 App. Div. 207 [4th Dept., 1945]; *Weiskopf* v. *City of Saratoga Springs,* 244 App. Div. 417 [3d Dept., 1935], revd. on other grounds 269 N. Y. 634), as to whether the Village of Gowanda could prepare and enforce an assessment roll which taxes part of its real estate in excess of the tax assessed against the other part, even though on a County boundary line basis.

We conclude that there was never any legislative intention that the money of the taxpayers of Erie County could be used for the extraterritorial benefit of nonresidents and that the payment of the moneys involved to the Village of Gowanda for general tax purposes was never contemplated by either the enabling act or the County resolution. It would be violative of the general principles of equality and uniformity of taxation to permit such a distribution (*Buchanan* v. *Town of Salina, supra; Weiskopf* v. *City of Saratoga Springs, supra*).

It is not necessary to find that the pertinent provisions of section 11 of chapter 278 of the Laws of 1947 (as in effect on July 1, 1964) are unconstitutional. We reach our present determination as a matter of statutory construction. If, however, the purpose of the act was to divert Erie County moneys to

the benefit of Cattaraugus County residents, that might produce an unconstitutional result. There is a good statement of the general powers of districts or municipalities in *Gaynor* v. *Marohn* (268 N. Y. 417). Also in point is *Village of Kenmore* v. *County of Erie* (252 N. Y. 437). In analyzing authority to apply moneys raised by taxes within one district or municipality to the benefit of another, the court in *Gaynor* said (p. 430): "In a word, we may state the law to be this: The State may authorize cities, villages or counties, as it has done by the provisions of the General Municipal Law, to establish lighting and power plants and systems. So, too, it may create power districts for this purpose, whether they embrace a county, or a portion of a county, or many counties, but the money to be raised for this purpose, if it is to come from taxation, must be limited to a tax or assessment upon the property benefited. For instance, the county of Albany cannot be taxed for the purpose of lighting the county of Rensselaer, which goes untaxed."

The Special Term Justice based his determination partly upon the fact that if the moneys were illegally or improperly used, the Erie County villagers would have redress in the courts. This is based on the premise that the Village is entitled to these funds but that it could be required to use them for the sole benefit of the residents of Erie County. If that were so, there would be no need for the present litigation. As we have noted, in that event there would be no justiciable problem presented. Furthermore, it would be futile and wasteful to require that the aggrieved taxpayers relitigate a part of the problem that is now before us.

The judgment should be reversed and the petition dismissed on the merits.

BASTOW, GOLDMAN, DEL VECCHIO and MARSH, JJ., concur.

Judgment unanimously reversed, without costs of this appeal to any party and petition dismissed on the merits, without costs.